H, C. LAUB, v. IONE ELIZABETH ROMANS, JUNIA BELLE ROMANS, and J. B. ROMANS, Guardian *ad Litem* and R. A. ROMANS, as Administrator of the Estate of MARY E. ROMANS, Intervener, Appellants.

**Mortgages:** ABSOLUTE CONVEYANCE: EVIDENCE. In seeking to show that the assignment of a contract for the purchase of land was made as security and not as an absolute conveyance, evidence of the intention with which the grantee received and

retained the assignment and the circumstances attending the disposition of the proceeds of the assigned property is admissible. Evidence held to show that the assignment was for the purpose of security.

*Appeal from Crawford District Court.*— HON. Z. A. CHURCH, Judge.

SATURDAY, DECEMBER 16, 1905.

REHEARING DENIED WEDNESDAY, SEPTEMBER 19, 1906.

ACTION to quiet title. Decree for plaintiff. Defendants appeal.— *Affirmed.*

*C. C. Cole* and *Conner & Lally,* for appellants.

*Shaw, Sims & Kuehnle,* for appellee.

McCLAIN, J.— In 1898 plaintiff conveyed certain property to J. B. Romans, his son-in-law, and W. H. Laub, his son, taking from them a bond to reconvey on the payment by him to them of the sum of $8,000, the money advanced by them to him in the way of a loan. The two instruments together, it is conceded, constituted a mortgage; this form of transaction being resorted to because the property was already covered by two mortgages. On the back of this bond to reconvey the plaintiff wrote, signed, and acknowledged an indorsement thereof to Mrs. Mary E. Romans, his daughter, wife of J. B. Romans, and the instrument thus indorsed was delivered to Mrs. Romans and found among her papers after her death in 1900. In connection with this assignment to Mrs. Romans, and as recited therein, she executed her promissory notes to the plaintiff for the total sum of $6,000, these notes being in varying amounts and coming due at different times, and they were used as collateral by plaintiff, but before the bringing of this suit had been taken up by him and were in his hands, and they are now in court for cancellation. The assignment is in the following words:

I, Henry C. Laub, the within-named purchaser, for and in consideration of six thousand and no-100 dollars, do hereby assign and transfer all my right, title, interest, and claim in and to the within contract or bond, and the premises therein described, unto Mary E. Romans, of Denison, in the county of Crawford and State of Iowa, her heirs and assigns, forever. And I do hereby authorize Mary E. Romans to receive from the said J. B. Romans and William H. Laub a deed for the south nineteen and one-half (19½) feet of lot five (5), and all of lots six (6), and seven (7), in block seventy-two (72); also the north ninety feet (90) of lots eight (8), nine (9), ten (10), and eleven (11), in block seventy-three (73); and also lot nine (9), in block eighty-four (84) — in the city of Denison, Crawford county, Iowa, as shown by the recorded plat thereof. Upon the final payment of all purchase money, and a full compliance with all the requirements contained in the within agreement is made and done by the said Mary E. Romans, her heirs and assigns, then a deed for said land shall be made to her, instead of me.

In 1903, W. H. Laub and J. B. Romans separately reconveyed to plaintiff all interest held by them in the property, and Dolly Romans, one of the daughters, quitclaimed to plaintiff all right, title, and interest she had in the property as heir to her mother under the assignment, and this action is brought to have the assignment to Mrs. Romans declared to be a mortgage only, to secure accommodation notes which have been taken up by plaintiff and are tendered for cancellation, and to have his title quieted as against the remaining two heirs of Mrs. Romans. One of these daughters is represented by J. B. Romans, her father, as guardian *ad litem;* and R. A. Romans, brother of J. B. Romans, under letters of administration granted three years after the death of Mrs. Romans, intervenes in behalf of her estate, asking an accounting for rents and profits, etc.

Plaintiff seeks to prove that the assignment to Mrs. Romans was by way of security for the notes for $6,000 executed to him by her, and which he claims were accommoda-

tion notes, while it is contended for defendants that the assignment was intended to vest the legal title of the property in Mrs. Romans in consideration of notes executed by her, subject, of course, to the incumbrances.   The case for plaintiff is based principally on the testimony of witnesses as to declarations of Mrs. Romans at different times indicating that she held the property under the assignment as security only, for notes given to help her father secure extension of time with creditors, and the conduct of Mrs. Romans during her lifetime in failing to assert any right to the income from the property which was yielding a considerable rental in the hands of J. B. Romans, who had assumed the management of it under the deed and covenant to reconvey executed in the transaction between him and W. H. Laub on the one hand and plaintiff on the other.   Plaintiff also testified to the relations which he was recognized by all parties as sustaining toward the property, though, of course, he was incompetent to testify as to any communication or transaction with Mrs. Romans, and could not, therefore, relate the conversation between them, if any, tending to show their mutual agreement at the time the assignment was executed.

Counsel for appellant contend, however, that the evidence as to the intention with which Mrs. Romans received and retained the assignment and the circumstances attending the payment of the proceeds of the property to plaintiff was wholly inadmissible, on the ground that plaintiff was seeking thereby to vary or contradict the terms of the written assignment purporting to make an absolute and unconditional transfer to Mrs. Romans of all remaining right of plaintiff in the property.   Counsel do not contend, of course, that evidence is not admissible in equity to prove a conveyance absolute in form to be in fact a mortgage, with the effect that the grantor is entitled to redeem; but they contend that this can only be done by proof of independent facts and circumstances, and not by proof of mere intention or understanding of parties contrary to the specific language of

the instrument. But we are unable to follow counsel in this line of argument. It would not be contended that plaintiff could not prove a separate writing contradicting the absolute conveyance, and that he could not prove by prior writings what the purpose was in making the conveyance, although in the latter of the two cases the rule that a written instrument cannot be contradicted by proof of prior inconsistent writings would apparently be violated. Now, as we understand it, a prior or contemporaneous oral argument to the effect that a writing, though in form an absolute conveyance, is intended as a mortgage, is just as much a fact or circumstance to be taken into account in determining the effect of the instrument as though such intention had been expressed in writing. The intention of the parties that the instrument is to be construed as a mortgage is not proven for the purpose of showing that they did not understand and intend the language used in the instrument, but for the puropse of establishing the independent fact that, although a conveyance was intended, the purpose of this conveyance was to create the relation of mortgagor and mortgagee, instead of grantor and grantee. Such a mutual understanding is just as much a fact or circumstance as any other which may be shown for the purpose of converting a conveyance absolute in form into a mortgage. It is only necessary, as we think, to cite a few of the decisions of this court on the subject, to show that such evidence is perfectly competent. See *Bigler v. Jack,* 114 Iowa, 667; *Trucks v. Lindsey,* 18 Iowa, 504; *Iowa Savings Bank v. Coonrod,* 97 Iowa, 106; *Hughes v. Sheaff,* 19 Iowa, 342.

The facts and circumstances which counsel for appellant would recognize as admissible to show an instrument of absolute conveyance to have been intended for a mortgage are that there was the relation of borrower and lender between the parties continuing after the conveyance, that the grantor continued in the use and occupancy of the property, and the like; but we do not see that such facts and circumstances

are any more controlling for the purpose than the facts and circumstances which the evidence in this case tends to establish. The declaration of Mrs. Romans tended to show that the notes executed by her were not executed as payment for the equity in the property which the assignment purported to convey to her, but as accommodation paper which she never expected to be called on to meet; that after this assignment she permitted, and, indeed, urged, the payment by her husband, J. B. Romans, to the plaintiff, of rents and proceeds from the property to which, under the assignment, she was absolutely entitled; and that in entire conformity to plaintiff's contention as to the nature of the transaction he received these rents and profits as his own, without crediting them upon the notes, and invested some thousands of dollars of his own money, aside from that received from the rents and profits in improving the property and removing incumbrances therefrom, which, if this assignment had been intended as an absolute conveyance, would have been entirely inconsistent with his interests. These are facts and circumstances of significance in ascertaining the mutual intention of the parties.

The only evidence tending to contradict the presumption that would arise from the action of Mrs. Romans in allowing the rents, profits, and proceeds of the property to be paid over by J. B. Romans to the plaintiff is that afforded by the testimony of her husband that these payments to plaintiff were made by him under the direction of his wife with the understanding that they should be applied on the notes given by her to the plaintiff; but not only is this witness unable to indicate when or where or in what language any such direction was given to him by his wife, or that he communicated any such intention to the plaintiff at the time payments were made, but on the contrary, it appears from his own statement that he never directed these payments to be credited on the notes, or took any steps to see that such credits were made, and it appears from the notes themselves

that no such credits have ever been made, but that the notes, still outstanding, apparently, as the unsatisfied obligations of Mrs. Romans, were in plaintiff's hands at the time this suit was instituted, and are now in court to be surrendered, if the court shall find, in accordance with plaintiff's contention, that these notes were given as accommodation paper, instead of as payment for plaintiff's remaining equity in the property, which the assignment purported to transfer to Mrs. Romans. That J. B. Romans did not believe, until a long time after the death of his wife, that she was the absolute owner of this property, although he knew, prior to her death, of the execution of this assignment, fully appears from the fact that he entered into a full settlement with plaintiff of claims as between him and the plaintiff growing out of the original conveyance to him and W. H. Laub of the property subject to the mortgages and the bond for reconveyance, and that in this settlement he treated the rents, profits, and proceeds received by him from the property as belonging to plaintiff, and accounted for them, and insisted on compensation as plaintiff's agent before executing the deed of conveyance to plaintiff which has already been referred to, although, if his testimony as to the direction of his wife to apply these proceeds in satisfaction of the notes is true, he must have known that his obligations were to the administrator and heirs of his wife, and not to plaintiff. At the time he executed this last conveyance to plaintiff he had already paid plaintiff more than enough money, received from this property, to satisfy his wife's notes, and yet he insisted, before such reconveyance should be executed, that plaintiff should extinguish one of the outstanding mortgages on the property, notwithstanding the fact that, if his wife was the absolute owner, plaintiff was under no obligation whatever to extinguish this mortgage. Of course, the acts of J. B. Romans are not binding on these defendants; but they are significant, as contradicting his testimony to the effect that he paid the rents and proceeds of the property to

the plaintiff in the extinguishment of his wife's notes given for the purchase money, and the direction which he says was given to him by his wife to thus satisfy her notes is the only evidence of conduct on her part relied on as indicating any understanding that she was the absolute owner of the property.

Other witnesses testified over objections in behalf of plaintiff to declarations of Mrs. Romans tending to contradict the declarations testified to in plaintiff's behalf as to the nature of the transaction; but, waiving for the present the legal objection that declarations of Mrs. Romans in her own interest could not be proven, although her declarations made contrary to her interest were admissible, we find on the whole evidence that the assignment to her was satisfactorily shown to have been intended and understood as made by way of security only, to protect her against liability on accommodation paper to the extent of $6,000 given to her father, and that, as no further liability on such paper exists on the part of her estate, the assignment has fully served its purpose and should now be canceled, and the title of plaintiff should be quieted as against the defendants.

The decree of the trial court is therefore *affirmed.*