SELMA SAVINGS BANK v. MARK T. HARLAN, Deft., H. A. HINKLE, Surety, Appellants.

**Negotiable instruments:** CONDITIONAL DELIVERY: PERFORMANCE OF CONDITION: EVIDENCE. A promissory note may be delivered on some condition, an observance of which is essential to its validity as between the original parties; and this condition may be shown by parol, as such a showing is not an attempt to vary or alter the terms of the written instrument. In this action against a surety on the note in suit the evidence that the note was delivered by the surety to an officer of the plaintiff bank, upon condition that it should not become effective until the bank procured a note and assignment, properly acknowledged, from the debtor and his wife to the surety, is held sufficient to present an issue on that question.

**Same.** The oral ratification of the attempted acknowledgment for the wife by her husband, of an assignment of her interest in an estate, did not cure the defective acknowledgment so as to entitle the instrument to record; and therefore the condition requiring a properly acknowledged assignment as a condition precedent to validity of the note was not complied with.

**Same:** RATIFICATION. The surrender by the bank of the old notes for which the new one was to be substituted did not obviate performance of the condition which was to give the new instrument vitality; and the bringing of suit upon the new note ratified the contract under which it was procured.

**Suretyship:** FRAUDULENT CONCEALMENT BY CREDITOR. Where the surety testified that at the time he signed the note in suit he stated to the payee that the debtor had told him the note would pay all his indebtedness except a specified sum, and that he would not have signed and delivered the note had he not been so informed, which latter statement was not denied, but the payee knowing of greater indebtedness of the principal remained silent, the issue of fraudulent concealment was for the jury and a finding to that effect would have been justified.

*Appeal from Van Buren District Court.*—HON. D. M. ANDERSON, Judge.

TUESDAY, DECEMBER 15, 1914.

ACTION on a promissory note to which the defendant Hinkle only interposed a defense. Verdict was directed as prayed, and judgment entered thereon. H. A. Hinkle appeals. —*Reversed.*

*Walker & McBeth,* for appellant.

*J. C. Calhoun,* for appellee.

LADD, C. J.—The action is on a note for $545, dated August 20, 1912, and payable six months thereafter. M. T. Harlan signed as principal and H. A. Hinkle as surety. Its purpose was to take up three notes previously executed, one of which, at least, was signed by both of them. One of the defenses interposed by Hinkle was that the note never took effect. He testified that they went to the bank, where he said to the cashier:

That Mark (Harlan) was to give me an assignment, signed by him and wife, to go on the note for $545; this assignment to cover their interest in the A. W. Harlan estate. . . . When I signed the note, I gave it and the assignment to Schlotter (the cashier), together with instructions that, when Mark and his wife acknowledged this assignment and sign a note to me for this amount, then my note to the bank was to become effective.

The estate of Harlan's grandfather, A. W. Harlan, consisted of two hundred acres of land and $2,000, and his claim was to one-fourth interest therein. The cashier admitted that the assignment was left with the bank for execution, and a note was to be procured from Harlan and wife, but denied that anything was said concerning this being a condition to the note sued on taking effect, and Harlan gave like testimony, and also that the old notes were not surrendered by the bank to him until after the note to Hinkle and assignment had

been signed by him and he had attached his wife's name thereto without her consent. He acknowledged the assignment for himself, and undertook to do so for his wife; the vice president of the bank, who was a justice of the peace, certifying that the acknowledgment was of "Winnie Harlan, represented by M. T. Harlan." Subsequently she may have orally ratified what her husband did, but the jury could well have found this to have been after this suit had been begun, and also after she and her husband had conveyed his interest in the estate to another, though, as he testified, "with the exception of $500," and he could not recall whether the exception was inserted in the deed. She testified to the conveyance of the whole interest to Baldwin:

Q. What part of it? A. Except this. Q. Did you except this? A. No; that was to be paid first of all. Q. Did you in the assignment to Baldwin except the interest Hinkle had in it? A. That I can't say.

It is plain from this recital that the evidence raised the issue of whether the note was to take effect only on the contingency of the bank first procuring the execution of the note by Harlan and wife and the acknowledgment

1. NEGOTIABLE
INSTRUMENTS:
conditional de-
livery: per-
formance of
condition: evi-
dence.

of the assignment by them. As the jury might well have found, they had obtained the signature of the wife to neither; nor had she ratified her husband's action with reference thereto prior to the beginning of this action and the conveyance of the property included therein to another. There was no evidence of any exception in such conveyance, and if there was an oral exception, the evidence fails to show the nature of it, and whether it was such as to save the first claim to the interest covered by the assignment.

Moreover, if Mrs. Harlan orally ratified the action of her husband, this would not render the acknowledgment such

that recording the assignment would have constituted con-

2. SAME.

structive notice of any inchoate interest in the property described therein acquired through the assignment from her. The subsequent ratification, if any, then, did not fully cure the bank's failure to perform the condition precedent to the note becoming effective, and this issue should have been submitted to the jury. That a promissory note may be delivered on condition, the observance of which is essential to its validity between the original parties thereto, is recognized by section 3060-a16, Code Supplement, providing that in such case "the delivery may be shown to have been conditional or for a special purpose only and not for the purpose of transferring property in the instrument," and is in harmony with the decisions of this and other courts. *Ware v. Smith,* 62 Iowa, 159; *Johnston v. Cole,* 102 Iowa, 109; *Niblock v. Sprague,* 200 N. Y. 390 (93 N. E. 1105). If the agreement was as testified by Hinkle, there was never any authorized delivery of the note, and it never became binding on the defendant. He is not contending that the contract which the note expresses was changed; his claim is that such contract was never entered into at all, for that the contingency upon which the note was to be deemed delivered never occurred. Parol evidence of the condition was admissible; for it was not an attempt to vary or contradict the written instrument. *Higgins v. Ridgway,* 153 N. Y. 130 (47 N. E. 32).

But it is said the cashier was without authority to surrender the old notes without payment. If so, doubtless recovery thereon may yet be had. In any event, surrendering the

3. SAME: ratification.

old notes would not obviate the condition on which the new note was to take effect. As he acted for the bank in taking the latter, it, in bringing action thereon, necessarily ratified whatever contract the cashier made in procuring it. *Eadie, Guilford & Co. v. Ashbaugh,* 44 Iowa, 519; *Farrar v. Peterson,* 52 Iowa, 420; *State Bank*

*v. Kelly,* 109 *Iowa,* 544. There was error in withdrawing this issue from the jury.

II. Hinkle testified that, when he went into the bank to sign Harlan's note as surety, he, in addition to explaining, as hitherto recited, that the assignment was to be acknowledged and a note to him signed before the note sued on was to become effective, remarked that:

4. SURETYSHIP: fraudulent concealment by creditor.

Harlan says that this will pay up all.he owes, with the exception of $350 against his property in Selma.

There was evidence tending to show that Harlan was indebted on said property $1,500. The cashier denied that the statement was made. Hinkle's statement that, had he been advised of the amount of such indebtedness, he would not have signed the note as surety is not controverted. The indebtedness of $1,500 was secured by mortgage, and, upon the commencement of foreclosure proceedings, Harlan and wife conveyed the property to the mortgagee in satisfaction of the debt. The jury might have found that the cashier representing plaintiff, with knowledge that the principal signer of the note had misrepresented the amount of his indebtedness, remained silent, and received the note signed by the surety, when, but for such misrepresentation, the surety would not have signed the note. Did this constitute fraudulent concealment? Had the remark not been made to the cashier or in his hearing, he would not have been required to inform the proposed surety of the existence of the obligation. There was no previous relationship between the parties exacting that they deal with each other, otherwise than at arm's length, and, as the matter was not concerning the contract itself, no duty of disclosure arose, in the absence of request or other circumstance requiring the creditor to speak. *Booth v. Storrs,* 75 Ill. 438; *Home Ins. Co. v. Holway,* 55 Iowa, 571. But the surety acts without consideration, and if, in fact, deceived, and the creditor becomes aware thereof, he ought not to be

permitted to remain silent and yet partake of the fruit of such deception. As observed in *London & Provincial Marine Ins. Co. v. Davies,* 47 L. J. 511, by Fry, J.:

> Very little said that ought not to have been said, and very little not said which, from the course of negotiations, ought to have been said, would be sufficient to prevent the contract being a valid one.

The Lord Chancellor clearly states the law in *Owen v. Homan,* 4 H. L. Rep. Cas. 1035:

> Without saying that in every case a creditor is bound to inquire under what circumstances his debtor has obtained the concurrence of a security, it may safely be stated that, if the dealings are such as to lead a reasonable man to believe that fraud must have been used in order to obtain such concurrence, he is bound to make inqury, and cannot shelter himself under the plea that he was not called upon to ask, and did not ask, any question on the subject. In some cases willful ignorance is not to be distinguished in its equitable consequences from knowledge. If a person abstains from inquiry because he suspects the result of inquiry will probably be to show that a transaction in which he is engaging is tainted with fraud his want of knowledge of the fraud will afford no excuse.

The rule as there expressed was followed by this court in Bank of *Monroe v. Anderson Bros. Mining & Ry. Co.,* 65 Iowa, 692, declaring that:

> If there is nothing in the circumstances to indicate that the surety is being misled or deceived, or that he is entering into the contract in ignorance of facts materially affecting its risks, the creditor is not bound to seek him out, or, without being applied to, communicate to him information as to the facts within his knowledge. But in such case he may assume that the surety has obtained information for his guidance from other sources, or that he has chosen to assume the risks of the undertaking, wherever they may be. But if he knows, or has good grounds for believing, that the surety is being

deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good faith and fair dealing demand that he should make such disclosure to him; and if he accepts the contract without doing so, the surety may afterwards avoid it.

See 1 Brandt on Suretyship, section 472; *Warren v. Branch*, 15 W. Va. 21.

The jury might have found that Hinkle made the statement in the cashier's hearing, that the latter knew it was untrue, and inferred therefrom, in connection with all that then occurred, that Hinkle was deceived thereby into relying on Harlan's financial condition as stated. If so, he was bound to disclose the truth, and if he remained silent in order to obtain the note, when, had he corrected the misapprehension under which Hinkle was laboring, he would not have obtained it, then he was guilty of such fraudulent concealment as will relieve the surety from liablity thereon. In other words, the bank, with information that the surety was induced to sign or deliver the note by deception, could not avail itself of the fruits of such deception without imparting to him the truth of which it was advised, and, if it so did, it must be held to have participated therein, and be held responsible therefor. While discovering no case in its facts like this, none inconsistent in principle has been found. The issue should have been submitted to the jury.—*Reversed.*

DEEMER, GAYNOR, and WITHROW, JJ., concur.