A. M. BABB, Appellee, v. HERRING MOTOR COMPANY, Appellant.

EVIDENCE: Parol as Affecting Writings—Whether Different Instru-
1   ments Constitute One Contract. On the issue and on the evidence

tending to prove that a written release was executed *as a part of the written contract sued on*, parol testimony is admissible on rebuttal to prove the contrary, and the *particular purpose* for the execution of said written release.

**TRIAL:** Instructions—Definition of Terms—"Consideration." Failure to define the term "consideration" is not erroneous, in the absence of a request.

**VENUE:** Office or Agency. Record reviewed, and held to sustain a finding that defendant maintained an agency in the county of suit, and that the controversy at issue grew out of such agency.

*Appeal from Clarke District Court.*—HOMER A. FULLER, Judge.

FEBRUARY 7, 1922.

REHEARING DENIED MAY 8, 1922.

ACTION at law, to recover certain extra commissions which plaintiff claims to have earned under an agency contract for the sale of automobiles, made between himself and the defendant and the Ford Motor Company. Plaintiff has been paid the 15 per cent commission provided by the contract; also for extra or added commissions prior to August 1, 1914. The matter in controversy is the additional or extra commissions for the two years, August 1, 1914, to July 31, 1916, which plaintiff alleges he earned and are due him from the defendant herein. Trial to a jury, and a verdict and judgment for plaintiff, in the sum of $5,636.24. The defendant appeals.—*Affirmed.*

*Carr, Carr & Cox* and *Clark, Byers & Hutchinson,* for appellant.

*O. M. Slaymaker* and *A. M. Miller,* for appellee.

PRESTON, J.—1. Plaintiff was employed by the Ford Motor Company, of Michigan, to sell Ford automobiles in certain described territory in and around Osceola, Iowa, and Murray, Iowa. He was a limited agent for the Ford Company; and defendant, Herring Company, had partial control of

1. EVIDENCE: parol as affecting writings: whether different instruments constitute one contract.

plaintiff, and part of the commissions due plaintiff for services plaintiff performed for the Ford Company. Such services and commissions were paid through the defendant herein. Plaintiff was required to make a separate written contract for each sales year, which was from August 1st to and including July 31st of the next year. Defendant was a party to each of said contracts.

The petition is in three counts. In the first count, plaintiff claims commissions under employment of October 29, 1914, for the period to and including July 31, 1915, in territory in and around Osceola. The second count claims for the same period, but under a contract made with the Babb-Murray Auto Company, which plaintiff used as a trade name. The third count is for the year ending July 31, 1916. Each count alleges that the added commissions could only be determined, if they were earned, at the end of the year, and that the same were forwarded by the Ford Motor Company to the defendant, to be paid to the plaintiff; that defendant has retained and appropriated the same.

The contracts are between the Ford Motor Company, as party of the first part; defendant, Herring Motor Company, as party of the second part, and known as the limited agent of first party; and plaintiff, as party of the third part, who is the sublimited agent of the first and second parties.

In due time, defendant filed its motion to transfer the case to Polk County for trial, which was overruled. This will be referred to later in the opinion.

The defendant answered in general denial, but admitted that the parties signed the written contract before referred to, but alleged that said instrument did not contain the full and complete agreement, but that, at the time of the signing thereof, and as a part of it, and for the same consideration, as an amendment and addition thereto, the parties entered into a further and additional agreement, as shown by Exhibits 1 and 2, as follows:

"Exhibit 1.

"I hereby specifically agree to release the Ford Motor Co., from any and all obligations to pay me rebate money which may

be earned under this contract in accordance with lines 159 to
172 inclusive, and that said contract may be, and is so amended,
and that I will make no claim for payment of any such rebate
earned by me exclusively from the limited agent, Herring Motor
Co., Des Moines, Iowa.  This agreement is attached to and made
a part of contract dated October 29th, 1914.

. "Babb-Murray Auto Co.,
"A. M. Babb, Sublimited Agent."

"Exhibit 2.

"I hereby specifically agree to release, and do release the
Herring Motor Co., from any and all obligations to pay me
rebate money which may be earned under my contract with
themselves and the Ford Motor Co., of date October 29th, 1914,
and said contract is hereby amended in this respect as between
myself and the Herring Motor Co.  I further authorize the said
Herring Motor Co., to collect and receipt for any bonus earned
under said contract and to indorse any drafts issued in payment
of same."

This is signed the same as Exhibit 1.  A like plea was made
by defendant as to the other two counts of the petition, and two
other sets of releases like the foregoing were set out.  Division
4 of the answer claimed that the contract sued on was not all
of the agreement between the parties; that the exhibits before
quoted were a part of it.  Division 5 of the answer asked a
reformation of the contract, so as to add thereto a provision
that defendant was to have the added commissions sued for in
this case.  Defendant moved to transfer to the equity docket
the issues raised in Divisions 1, 2, 3, and 5 of the answer.  This
was done, and reformation was denied, and the trial on issues
raised by Division 4 of the answer was continued for trial
as a part of the law action.  An appeal was taken, and the de-
cision affirmed.  *Babb v. Herring Motor Co.*, 190 Iowa 814.

In this connection, it may be proper to say that it appears
that, for the year prior to the two years now in controversy,
plaintiff had been selling cars under the same arrangement, and
had signed releases like the foregoing; but notwithstanding this,
defendant had paid plaintiff the extra commissions for such

prior period. Plaintiff claims that the same arrangement was renewed, and covered the two years now in controversy. In relation to the releases for the year before, defendant wrote plaintiff, January 10, 1914, and again on January 21, 1914, as follows:

"We enclose herewith a form of release of rebate which we ask you to please sign and return to us at once. You will please understand that the execution of this release does not in any way release us from paying you the rebate which you will earn according to your contract, but does permit the Ford Motor Company to pay to us as fast as earned upon our volume of business the earned rebate. This in turn will permit us to settle with you direct, promptly as fast as you have earned any rebate. This will avoid the long delays which we have heretofore had in securing for our dealers the rebate which their volume of business has earned them. We know you will not hesitate to accept us for this rebate and we promise to let you have our check just as fast as your volume of business entitles you to such bonus. We repeat that we would like you to sign and return this release to us at once so that we may get this plan in operation and we also repeat that you are in no way releasing us from our obligation of paying to you the amount of bonus which your volume of business earns you under your contract and we further agree to pay such bonus as fast as earned.

"Yours very truly,
"Herring Motor Car Company
"[Signed] C. L. Herring."

"P. S. We are enclosing six of these agreements and you will please sign 2 for each territory. Osceola, Woodburn and Murray."

It appears that the word "rebate," as used in the letters, refers to what has been called added or extra commissions. The defendant further alleged that the only consideration received by defendant in connection with the transaction, and for the services rendered by it, was the amount to be paid to it as additional commissions or rebate, mentioned in Paragraph 30

of the contract before referred to. Paragraph 30 is quite lengthy. The substance of it is that the Ford Motor Company agrees to allow and pay to third party additional commissions on the net amount of business he shall do under the contract on Ford automobiles, but not on Ford parts, repairs, or accessories. It then states in detail the percentage that will be paid on a certain amount of sales, and a larger percentage on larger sales; and that payments made during the year shall be credited on the final amount found owing him, and deducted when he becomes entitled to and shall receive the higher percentages, and so on. Later, and as we understand it, after the determination of the appeal to the Supreme Court, defendant amended Count 4 of its answer, alleging that, at the time of the execution of the contracts sued on by plaintiff, and as a part of the consideration therefor, plaintiff executed and delivered certain releases to the Ford Motor Company and the Herring Motor Company, respectively, copies of which have been heretofore set out.

A voluminous reply of fourteen pages in the abstract was filed by plaintiff, the substance of which is that all allegations in the answer are denied which are inconsistent with the allegations of plaintiff's petition, and he denies that he assigned the added commissions to the defendant, but asserts that, if it should be so held, then there was no consideration, and that the Ford Motor Company, the principal of plaintiff and defendant, had no knowledge thereof, and did not consent thereto; that plaintiff was not employed by this defendant, but only designated by it; that he had built up a large business in Ford autos, and that the contract providing for additional compensation, as his sales increased, was to make it an incentive for him to do as much business as possible, which provision is for the benefit of the Ford Motor Company, as well as for plaintiff; that the contract between the three parties provided that no interest therein could be assigned without the written consent of the Ford Motor Company, and the contract could not be changed by independent or outside agreement; that the releases relied upon by defendant were not signed by anyone except plaintiff, and could not vary the original contract between the three; that the written contract between the three provides:

"It is agreed that such added commissions shall not be paid to second party [defendant] until the second party shall have furnished satisfactory evidence to first party [Ford Motor Company] that all commissions and added commissions due or owing, or which might later become due or owing the sublimited agent under second party, have been fully paid, or until satisfactory arrangements are made with the first party to insure sublimited agent's being paid the commissions, and added commissions which may be due, or become due them under their respective contracts."

It is also alleged that such provisions refer to the claims of plaintiff in this case. Though it is not entirely clear from the record, we understand plaintiff to plead that the provision just quoted was in another contract between the Ford Motor Company and defendant herein, and that plaintiff is not able to set out a copy thereof, because it is in possession of defendant. It is not very material, perhaps, whether this provision is in a separate contract or not.

The reply further alleges that the releases were not turned over to the defendant for the purpose of releasing defendant or the Ford Motor Company from paying plaintiff the added commissions, but were only turned over to defendant for the purpose of getting the matter in shape, so that the Ford Company would pay the added commissions to defendant as they accrued, so that defendant could, in turn, pay them to plaintiff, and so that defendant would not have to wait until the end of the year before the money could be received by it; that plaintiff's said added commissions did not accrue as soon as the added commissions due the defendant, for the reason that plaintiff's territory was smaller, and his sales were not so large; and that, so that the defendant could get the added commissions before the year expired, the said defendant verbally requested this plaintiff to sign the papers, so that the same could be turned over to the Ford Motor Company, saying that it would pay the added commissions due such defendant as soon as they matured; and that such defendant stated and represented to the plaintiff that, in signing said papers, he was not in any way releasing his added commissions, was not transferring the same to this defendant,

and was not releasing the Ford Motor Company or this defendant from paying them, but was only signing the said papers so that the defendant could use the same with the said Ford Motor Company to get its added commissions as the same matured, with the understanding that the said plaintiff would be paid his said added commissions by the defendant at the end of his said contract; that it was only under these terms and conditions that the plaintiff signed said papers; and that he did not deliver the same to the defendant or give it to the defendant for the purpose of releasing and discharging his said added commissions, but only for the purpose of allowing defendant to collect the said added commissions from the said Ford Motor Company as they matured, as the said Ford Motor Company refused to make payment until it had such paper from this plaintiff; that the said plaintiff and defendant understood that this was the manner in which said papers were given, and that such was the interpretation to be given to such papers; and that the defendant consented thereto and is bound by such interpretation; that the releases were only turned over to defendant to be used by it in collecting the added commissions due plaintiff from the Ford Motor Company; and that such added commissions were to be and remain the property of plaintiff; and that said papers have served their purpose, and are now of no further effect, and are not binding upon this plaintiff.

The original contract between the three parties is contained in sixteen pages of the abstract. It is too long to set out in full. Though it may prolong the opinion, it seems necessary to set out some other provisions therein, in addition to those already mentioned, to get a correct understanding of the situation and of the purpose for which the releases were signed, and of their effect. It provides, among other things, that the Ford Company and defendant reserved the right to each to make direct sales to customers in the territory assigned to plaintiff as sublimited agent, in which case a smaller commission was to be paid plaintiff. This provision was not to apply to sales of parts or accessories which were otherwise provided for. It further provides that plaintiff should transact his business with first party through defendant, make advances to defendant,

make remittances and deposits through defendant, make his reports and receive his payments or commissions and the like through the second party, defendant; and that first party may order or direct any change in methods of business in particular instances, or in general, as it may deem best, and second and third parties shall conform thereto. The contract further provides that defendant shall allow and pay the sublimited agents the regular limited agent's commissions, and will require each sublimited agent to execute their agreements on blanks provided by the Ford Company, in triplicate; that no arrangement made by defendant with any sublimited agents shall be binding upon the Ford Company, until reduced to writing on such blanks and approved and signed in triplicate. Second party (defendant) further agrees not to enter into any private arrangement with any of its sublimited agents, except as provided in the contract.

It appears that defendant's territory consisted of a large number of counties, and it sold Ford parts and repairs to Ford dealers, and received therefor a commission from the Ford Company. In addition to this, it appears that defendant handled tires, tubes, oils, etc., which it did not get from the Ford Company, which brought defendant in touch with all such dealers, and gave defendant an advantage in dealing with them. Evidence for defendant shows that it handled accessories for all cars, and sold them to 10,000 dealers, while it only had 125 Ford dealers; that this had nothing to do with the Ford business; that defendant got a profit on these matters, ranging from 5 to 13 per cent; that the purpose in separating into three contracts was to reduce plaintiff's commissions; that, for the year 1913-14, plaintiff was required to execute three contracts, covering territory adjacent to Osceola, Murray, and Woodburn, for the purposes just stated. As we understand it, the Ford Company pays to defendant a 15 per cent commission, and then added commissions, depending upon the amount of business done in defendant's territory. The amount of commissions to be paid to the sublimited agents operating under defendant is the same as the commissions to be paid to defendant, and these commissions are to be taken from defendant's commissions.

The amount which plaintiff would be entitled to recover as added commissions, if it should be found that he was entitled to recover at all, was stipulated. Substantially the only conflict in the evidence is as to what occurred at the time, or about the time, the written contracts were made, and in reference to the release. Defendant's officer Rockwell and the plaintiff were the only ones present at that time, and they made the contract; and the conflict for the most part is between them, although another officer for defendant testifies to circumstances bearing thereon. The defendant's claim all the way through was that the written contracts did not express the real contract between the parties, and it claimed that the releases, copies of which have been before set out, were executed at the same time, and were a part of the original contracts. Mr. Rockwell so testifies, and he first testifies on the subject, and as to what took place at the time in question, and on surrebuttal, contradicted testimony given by plaintiff. Plaintiff, in rebuttal, testified as to what took place, and as to the arrangement. Plaintiff's version of the transaction is that he started selling Ford cars in Osceola in December, 1912; under the Herring Motor Company; that he signed the contract dated October 29, 1914, which covers the sales year 1914-15, and the other one like it for the Murray territory, in the office of defendant company in Des Moines; and that only he and Rockwell were present; that they were signed about the same time; that, after he had signed these papers, Rockwell said something about signing other papers (the so-called rebate releases, copies of which have been before set out). Over objection by defendant that it varied the terms of the writing, witness said that:

"He had some papers there that were receipts for added commissions, that he wanted me to sign. I asked him why I should sign those papers, and he said, according to their contract with the Ford Motor Company, they could not get their commissions until the sublimited agent, myself in that case, had submitted a receipt, or they had satisfactory evidence that I would get the money. They had to show the company that. He said, 'This is the same thing you signed last year.'"

The defendant objected to evidence of the transaction of

the prior year, as having no bearing, and as varying the terms of the contract in suit. The substance of the court's ruling was that he considered it not as varying the terms of a writing, but that it was for the purpose of showing what, as between the parties, the consideration was, and whether it was made as a release, or as a receipt in advance; and that the testimony in regard to the former contracts, while not binding in this case, was allowed for the purpose of throwing light upon the circumstances surrounding the transaction in question. The releases were admitted, and the jury admonished that they were to be considered only in determining the question of whether the contract in suit is as claimed by the defendant or as claimed by the plaintiff. Thereupon plaintiff testified that he had signed exactly the same papers in January of the same year, for the prior season.

"I signed exact copies of Exhibits 1 and 2 both. The papers that I signed in January were mailed to me, and I mailed them back to defendant. Exhibit F is a letter I received January 10, 1914. * * * There came with the letter some papers, releasing the Ford Motor Company, and receipts for additional compensation to the Herring Motor Company. They are the same ones as these exhibits I have just been referring to. * * * After I received the second letter, I signed the papers referred to in the letter, and sent them to defendant."

Plaintiff then offered the two letters of January 10 and 21, 1914, one of which has been before set out. Witness continues, in regard to the conversation with Rockwell as to the contracts in suit:

"I objected to signing these papers, and he said, 'You signed them for last season and got your added commissions all right, didn't you?' I said that I had gotten them. He said: 'It will be the same this year. We have to have these papers signed, in order to get our added commissions from the Ford Motor Company.' He did not make any claim that by signing the papers that I was turning over these added commissions to defendant, or that they were for their own use, or that they were to keep them. I would not have signed them if he had told me that was the purpose."

As said, though the contract for the first year of the two years in controversy is dated October 29, 1914, it covered a part of the time for 1914 prior thereto; and it appears that for such prior time plaintiff was operating under the contract which bears date October 29th. The contract recites that it is for business until August 1, 1915, and does not say when the contract shall commence. That is the only date. As to the last year, 1916, he says that Rockwell said he had some other papers which he would like to have plaintiff sign; that there were two of them, like Exhibit 1, before set out; and that Rockwell said, in regard to the object of getting these papers:

"I told him I hadn't received my commissions for the last year, and he said: 'You will get them all right. They never do come along until fall. Never have gotten them until October.' This was in August. 'You never have got the added commissions until fall, when all the business is wound up. You will get them in plenty of time, when the business is wound up for the season.' I asked him if it was just the same as the former years, and he said: 'You will. It is just like it has been.' He said he had to have a receipt from the sublimited agents to the Ford Motor Company, before that company would pay to the Herring Motor Company the added commissions; and if we would sign those and give them to them now, their volume of business would start added commissions coming back in three or four weeks, to where they would be getting 5 per cent. If we would sign them now, they would have that money to use in the business. He did not, on either of these occasions, make any claim that I was turning them over to them, and that I had no further interest in them. I would not have signed these last papers if he had made any statement of that kind. After the time I signed this last paper, I had talks with Rockwell a number of times about these commissions coming to me. He said matters were slow, and they would come through eventually, as soon as the business was closed up. Afterwards, and in July, 1916, I asked him again about it, and he said he didn't believe I was going to get it. He said they had not made as much money as they would like to, and they were going to quit anyway that year, and did not think he would pay them. I told him it was a

funny way to do, not to give a man what he had earned, and told him I was going to turn the matter over to my attorney. No part of the added commissions under these contracts has been paid for these two years."

He says he relied on Rockwell's statements as to what the releases meant, and not what they read. The contracts and releases were all signed at the same sitting,—the contracts first, and then the receipts or releases. He says he had no talk with Mr. Herring when the contracts for the two years 1914 and 1915 and the releases were made. He denies Mr. Herring's testimony on the subject.

It appears that defendant ceased acting as agent for the Ford Company at about, or soon after, the end of the second sales year in question. We understand appellant to concede that, if the releases were not a part of the original contract, and if the contract was as plaintiff claims, then plaintiff would be entitled to recover. The principal contention of appellant seems to be that the evidence offered by plaintiff on this subject, as tending to show what the contract was, was not admissible. We think it was, and we shall briefly state the reasons for so holding, later in the opinion. The appellant's objection thereto was raised by objections to the evidence, by motion to direct a verdict, by offered instructions, and by exceptions to the instructions given. Appellant's motion for a directed verdict was made at the close of plaintiff's evidence, and was overruled. It was not renewed after defendant introduced its evidence. Appellee contends, citing cases, that, if there was any error in overruling the motion, it was waived.

The trial court instructed on all the theories of the case, as presented by both plaintiff and defendant, saying, in part, substantially this:

That the first question is, What were the contracts and agreements between plaintiff and the defendant and the Ford Company? that plaintiff claims that the written contracts, A, B, and C, were the contracts, while defendant claims that such are not the whole of the contracts entered into; that the jury should consider all the evidence surrounding the parties hereto at, before, and after the signing of the contracts; and that, if

the jury should find that the releases offered in evidence by defendant were a part of said contracts, and intended by the parties hereto as such, and to release to defendant the added commissions, and were not the property of plaintiff, but were, by the terms of the contract, as modified by the releases, to be the property of defendant, then the verdict should be for the defendant. But on the other hand, if the jury should find that the contracts A, B, and C do represent the agreement of the parties, and that said releases were executed and delivered by plaintiff to defendant for the purposes claimed by plaintiff, there would be no consideration for said releases, and defendant could not be held justified in holding the money received from the Ford Motor Company, under said contracts A, B, and C. The foregoing is Instruction No. 8. The substance of No. 9 is that defendant denies that plaintiff, under the contracts with the defendant and the Ford Company, was to be paid any further sum than that of 15 per cent of plaintiff's sales, and claims that the contracts A, B, and C do not express all of the contract, and that the releases are and were a part of the contracts, and that it was understood and agreed between plaintiff and defendant and the Ford Company that the releases were a part of the contracts; that, if the jury should find that said releases were made at the same time, as a part of the contracts, and intended to convey and release to said defendant the added commissions, then plaintiff could not recover. The substance of No. 10 is that defendant claims that the releases were executed and delivered as a part of the contracts, and that the consideration for said releases was that defendant would execute the contracts A, B, and C, and appoint plaintiff as a subagent; that, if the jury should find such contention by the defendant to be true, and that the releases were executed as a part of the contracts, and for the purpose of inducing defendant to execute the contracts, then said releases would be founded upon a good and sufficient consideration, and the verdict should be for defendant; but, on the other hand, if the jury should find that plaintiff and defendant executed the contracts A, B, and C, and that the execution thereof was not dependent upon the execution of the said releases, and that said releases were, at the

same time, or thereafter, made by the plaintiff without any consideration therefor, defendant could gain no rights by reason of said releases, and the same would not be a defense to the claim of plaintiff,—in other words, the execution and delivery to defendant by plaintiff of said releases must have been as a part of the contracts of the parties, to be binding upon plaintiff. The substance of No. 11 is that plaintiff admits signing the releases, but claims that the same were executed and delivered to defendant, not as a part of the contracts A, B, and C, and that the same were not intended to be a part thereof, and that they were executed by him to enable defendant to secure from the Ford Company the added commissions, and so that the same could eventually be paid over to plaintiff by the defendant; and that, if the jury should so find that there was no other consideration given by defendant to plaintiff for the execution of such releases, then defendant could not retain the amount of the added commissions so paid to it by the Ford Company, and the verdict should be for plaintiff. The jury was further told that each of the contracts A, B, and C was the basis of a separate count in the petition, and that the jury could find for plaintiff on any one or all of said counts, or against him on any one or all of said counts, as the jury might deem the evidence warranted. Instruction No. 6 placed the burden of proof upon the plaintiff, and stated that, unless he had proven by a preponderance of the evidence, the verdict should be for the defendant.

Taking up now briefly the question as to the admissibility of the evidence in regard to the releases. There might be force in appellant's contention if the releases were considered by themselves, or as a part of the original contracts between the three parties. Defendant was claiming that the original contracts did not express all the agreement. They so pleaded, and they first introduced their evidence on that subject, and their evidence tended to show that the releases were executed in such a manner as that they were a part of the original contract. Thus far, appellant concedes, as it must, that the evidence was proper. It is quite clear that plaintiff had a right in rebuttal to meet this testimony by contradicting defendant's evidence, and by showing that the releases were not executed at the same time,

or as a part of the original contracts, and if they were not so, then to explain the purpose of the execution of the releases. It is significant that it does not appear, and we do not understand defendant to claim, that anyone was present, at the time the releases were executed, who was representing the Ford Motor Company. At least, the jury could have found from the evidence that no one was representing the Ford Motor Company, and that the contract was not modified as to it. The original contract was between the three parties. It provides that no changes are authorized without the consent of the Ford Motor Company. This being so, the plaintiff and the defendant could not bind the Ford Company. The original contract is specific in regard to this, and is specific that no arrangement shall be made between the limited and sublimited agents which will deprive the sublimited agents of the added commissions due from the Ford Company. The matters just referred to were, perhaps, more questions for the jury, as bearing upon what the contract and arrangement really were.

Appellant cites *Doolittle v. Murray & Co.*, 134 Iowa 536, 546; *McCabe v. O'Connor*, 69 Iowa 134; and *Farrell v. Wallace*, 161 Iowa 528, 532. These were cases where parol evidence was sought to be introduced, to vary an unambiguous writing. The cases are cited to the point that the evidence varies a written contract, and that, as to part of the parol evidence, the court erroneously admitted evidence as to releases signed in the preceding year. As to the last mentioned proposition, we think that the matters were so closely related and connected that it was proper to admit such evidence for the purpose indicated by the court.

Many cases are cited by appellee on this point. We shall simply cite some of them, without discussion. He cites *McCormick Harv. Mach. Co. v. Morlan*, 121 Iowa 451, to the point that no parol testimony was received which varied the terms of the writing; that it is always permissible to show that a contract was never delivered. Also, *Rath v. Schoon*, 192 Iowa 180, as holding that, if the terms of an agreement are ambiguous and require explanation, then the conversations and conduct of the parties are admissible in aid of the construction; that, if the

releases are admissible in evidence, then they must be construed in connection with the contracts sued on and all the other testimony which presents an ambiguous situation. They cite, also, *Waukee Sav. Bank v. Jones*, 179 Iowa 261, and *Sutton v. Weber*, 127 Iowa 361, 367. Other cases are cited on the theory that the releases signed by plaintiff were only receipts in advance, to enable defendant to sooner obtain the money from the Ford Motor Company, and not given for the purpose of releasing added commissions; that plaintiff had a right to show these things by parol testimony. *Oakland Cem. Assn. v. Lakins*, 126 Iowa 121; *Selma Sav. Bank v. Harlan*, 167 Iowa 673, 676; *Laub v. Romans*, 131 Iowa 427. The following cases are cited, as holding that it is always admissible to explain a receipt by parol testimony: *Jones v. General Const. Co.*, 150 Iowa 194; *Dilenbeck v. Herrold*, 183 Iowa 264; *Halligan v. Keller*, 167 Iowa 72; *Mounce v. Kurtz*, 101 Iowa 192; *McAnnulty v. Seick*, 59 Iowa 586; 22 Corpus Juris 1135. Other cases are cited to the point that, although no fraud was originally intended in the execution of the releases, defendant may not subsequently make improper use of the instruments, in violation of the promise or agreement of the defendant. *Lavalleur v. Hahn*, 152 Iowa 649, 662; 17 Cyc. 693; 22 Corpus Juris 1212. While appellee has quite fully stated the facts, it seems he has not specifically pleaded fraud.

2. Appellant complains of Instructions 8 and 9, the substance of which has been heretofore set out. Appellee contends that the instructions were not properly excepted to by appellant, so as to raise the questions now argued. However this may be, we think the instructions fairly present the defendant's theory of the case. In one of them, the word "intention" is used, but we think it is used in such a way as that it means a purpose or object of the parties in executing the releases, as shown by the evidence.

3. Appellant complains because the court did not, by instructions, define the legal term "consideration." It is necessary sometimes to define legal terms, but we think the word "consideration" is so generally used and so well understood that the jury will

2. TRIAL: instructions: definition of terms: "consideration."

understand its use without any instructions.    38 Cyc. 1686;
*Iowa St. Sav. Bank v. Black,* 91 Iowa 490, 496.    No instruction
on this subject was asked by appellant.    In the cases cited by
appellant, instructions were asked and refused.    We think the
trial court covered in its instructions all issues tendered by de-
fendant, and that the instructions asked were covered by those
given, in so far as they were applicable.    Some other questions
are argued, but the opinion is already too long, and we think
we have covered the main points.

4.    Appellant moved for a change of place of trial from
Clarke County to Polk County.    The argument is very brief on
that proposition.    It is appellant's contention that defendant
3. VENUE: office      is not a resident of Clarke County, and has no
or agency.      agent therein; that the suit does not arise in
connection with any agency in Clarke County, and that the
contract was not to be performed in that county.    They cite
Code Sections 3500, 3501, 3504.    Plaintiff claims that defendant
had an office and agency in Clarke County for the transaction
of business, and that this suit grows out of and is connected
with the same.    Code Section 3500.    Appellee filed an extended
resistance to appellant's application for change, setting up ex-
hibits and other matters as tending to show the manner of con-
ducting the business in Clarke County.    Plaintiff bought all his
cars through defendant, and purchased his supplies and acces-
sories from the defendant.    The cars were sold in Clarke County.
Defendant had direct supervision over plaintiff's business in
Osceola.    Defendant's agents and employees visited plaintiff's
place of business, and directed how the same should be operated
and conducted.    Plaintiff had no dealings directly with the Ford
Company, but always made his contracts with the defendant.
A letter from defendant to plaintiff states that plaintiff's cars
would be shipped direct to plaintiff in carload shipments.    Thus
defendant construed its business relations with plaintiff to mean
that plaintiff was one of its dealers.    This letter recites that
heretofore defendant had maintained a large stock in Des Moines,
when possible, but that this was to be discontinued.    In the con-
tracts, defendant is referred to as the limited agent, while plain-
tiff is referred to as the sublimited agent.    The Ford Motor

Company wrote defendant, referring to plaintiff as defendant's agent at Osceola, and stating that they were unable to assist defendant's agent. Other exhibits show how defendant handled business of the various subagents. The contracts sued upon required plaintiff to maintain a place of business in Osceola for the purpose of conducting such sublimited agency.

Other circumstances need not be referred to. We are cited by appellee to *Locke v. Chicago Chronicle Co.*, 107 Iowa 390, 394; *Gross v. Nichols*, 72 Iowa 239. These cases hold that the question as to whether defendant was maintaining a place of business in Clarke County is a question of fact, and not of law. We think the following cases sustain the trial court's ruling: *Gilbert v. McCullough*, 140 Iowa 362; *Lake v. Western Silo Co.*, 177 Iowa 735; *Ockerson v. Burnham & Co.*, 63 Iowa 570.

Appellee makes the further point that the ruling now under consideration was made prior to the appeal of the case to the Supreme Court; that appellant did not present that question on the former appeal; that this should have been done; and that, by its failure to do so, appellant has waived the question. *Mitchell v. Lang & Co.*, (Iowa) 112 N. W. 87 (not officially reported).

No prejudicial error appears, and the judgment is—*Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.