L. A. ANDREW, Superintendent of Banking, Plaintiff, Appellant, v. FARMERS STATE BANK of Logan, Defendant, Appellant; ANNA BOLTER, Executrix, et al., Claimants, Appellees.

No. 42106.

September 18, 1934.

Rehearing Denied January 19, 1935.

Roy E. Havens, and Charles Roe, for appellants.

Robertson & Wolfe, for appellee.

Per Curiam: The record in this case is quite voluminous. It presents a situation with many singular complications. A solution of the problems presented requires only the application of well-established principles of law. In this situation we shall not incumber the reports with more than a statement of our conclusions as to a proper disposition of the case.

The Farmers State Bank of Logan, Iowa, became involved in financial difficulties in the fall of 1927. In December of that year the bank was ordered to make an assessment of 100 per cent on its stock, and this was done in January of the year 1928. There is a very serious divergence in the claims of the parties as to what was done after the assessment was made, but our conclusion is that various stockholders, who are claimants herein, left cash, checks, and notes with the officers of the bank to be held by the bank until all stockholders had paid their assessments, and in case the assessments were not all paid such items were to be returned to the owners or applied on the statutory liability to an assessment. There is no dispute but what the cash, checks, and notes given by the stockholders were placed in separate envelopes and kept in the

vaults of the bank apart from the assets of the bank and without being entered on the books of the bank until June 13, 1928. On that date, under direction of a bank examiner, the checks were cashed and the notes entered among the bills receivable of the bank. The next day, June 14, 1928, the bank closed its doors, and subsequently L. A. Andrew, superintendent of banking, was appointed its receiver.

The situation has caused much litigation. In another aspect these matters were before this court in the case of Andrew v. Farmers State Bank of Logan, 212 Iowa 329, 236 N. W. 392. The matters now before the court are claims of the stockholders who ask that their claims be established against the receiver as being entitled to preference. The claims are not all the same. They fall into classes and each class will have individual attention. There are, however, certain considerations which apply to all claimants.

In the first instance the receiver contends that the agreement, by which the notes, checks, etc., were to be held separate from the bank's general assets, has not been established. From the testimony of the various witnesses and the fact that the checks and notes were kept separate and apart, we have reached the conclusion that such agreement was made.

■■■ The receiver contends that it was the duty of the bank to collect the assessment made pursuant to the instructions of the superintendent of banking and that consequently the agreement was void. The question whether the liability of the stockholders on the assessment was affected in any manner by the agreement is not involved in this matter. The question is whether the officers of the bank can accept cash, notes, and checks subject to certain specific conditions and retain them untrammeled by the conditions. We are agreed that, regardless of whether the officers of the bank could affect the ultimate liability of the stockholders by the agreement made, they may not secure and accept cash, checks, and notes upon specific condition, and apply them to obligations to the bank in violation of the specific conditions agreed to. Selma Savings Bank v. Harlan, 167 Iowa 673, 149 N. W. 882; Code 1931, section 9476.

■■■ The receiver insists that the claims should be rejected because they were not filed at an earlier date. The trial court permitted them to be filed. The fact situation is complicated. No prejudice is shown to have resulted from delay in filing the claims. We think the claims should be disposed of on their merits. Subse-

1316

quent to the appointment of the receiver the liquidation of the affairs of the bank proceeded in the usual manner and the usual reports were made and certain dividends have been paid, all without objection from claimants herein. These matters present no serious obstacle to the determination of the claims.

■ As was usual, when the affairs of the bank were acute the officers of the bank resorted to the newspapers with notices and articles in relation to the solvency of the bank. The advertisements, read as an ordinary man would read them, would create the impression that the amount of the assessment on the stockholders had been brought into the bank. In this situation the receiver asserts that claimants are estopped from pressing their claims. To sustain the estoppel the receiver produced a number of witnesses who testified to continuing their business relations with the bank after reading the article, and one who testified to having made a new deposit in the bank after reading the article. It is the thought of the receiver that claimants should have protested against the publication of the article or given some notice of the agreement by which their notes and checks were being given and held. But the fact situation is this: The article was published shortly after the voluntary assessment was made against the stockholders of the bank on January 22, 1928; there is nothing to indicate that the agreement in relation to holding the cash, notes, and checks had been entered into at that time; the earliest receipt in the record is dated April 17, 1928; the record rather indicates that the agreement was a device subsequently evolved to facilitate the collection of the assessment. In this situation we hold that the receiver's plea of estoppel must fail.

■ The receiver began suits against the stockholders of the bank, including claimants, to recover the statutory assessment. In this suit claimants set up the facts above referred to as entitling them to offsets. The facts were held by this court to be unavailing in Andrew v. Farmers State Bank, 212 Iowa 329, 236 N. W. 392. The receiver now asserts that the act of pleading such facts was an election of remedies which precludes claimants from pressing their claims. In that suit claimants, who were there defendants, sought to avail themselves of their rights by way of set-off against their statutory liability. This was denied to them. Their claim in that respect was entirely consistent with their present position, their position in each instance being that by reason of the facts the receiver is indebted to them in such a way that they are entitled to a

preference in payment. Their failure in the earlier suit was due, not to the character of their demand, but to the fact that their demands arose prior to the appointment of the receiver, in virtue of which they were not available as a set-off in the suit by the receiver to recover on the right given to *him* by statute. There is no inconsistency in asserting that claimants have, a preferred claim and a claim which they are entitled to offset against their statutory liability as stockholders. It is only in situations in which there is inconsistency that the doctrine of election applies. 20 C. J. p. 6, section 7. In no aspect does the former litigation interfere with the prosecution of the present claims.

The former case definitely determined that the claimants were not entitled to off-set their claims against their liability for the statutory assessment on their shares of stock and such is the law of the case. No judgment rendered in this action can be offset against judgments in the stock assessment suit for the obvious reason that the allowance of a claim as entitled to preference in payment does not determine that the claim will be paid in full, the allowance of preference merely establishing the class of claims with which the claim is to be grouped in the matter of the distribution of funds.

As a summary of all the preceding discussion, it may be well to express the conclusion that claimants have just and enforceable claims against the receiver. This brings us naturally to a discussion of the several groups into which the claims fall by reason of their facts.

Some of the stockholders gave notes to the bank. These notes were placed in assets of the bank the day before the bank closed its doors. Some of such notes are now in the hands of the receiver. These notes were placed in the bank's assets in specific violation of the conditions upon which they were given into the hands of the officers of the bank. The title of the bank to such notes was not good. The title of the receiver in such notes is no better than the bank's. It follows that claimants in this class are entitled to the return of their notes.

With a vigor entirely commendable the examiner in charge of the closed bank made efforts to collect the notes of the stockholders given as above stated. In some instances such efforts were successful. The receiver asserts that claimants, who with knowledge of the facts, paid their notes to the bank, may not now press their demands for a return of their money. As a legal proposition the

position of the receiver in this respect is true, but the record reveals such a situation in connection with such payments that we conclude the equities of the situation fairly sustain claimants in their position in pressing their claims. In connection with claims of this class it is noted that in the discharge of some of the notes an offset of deposits was allowed and only a balance paid by check or cash. In the final decree the deposits offset will be allowed as deposit claims upon which dividends in the percentages heretofore paid on deposit claims will be paid by the receiver upon the entry of decree. As to the cash paid by such claimants the decree will direct the receiver to repay the amount paid by the respective claimants without the allowance of interest from the time of payment. No question of the propriety of the repayment of such amounts in full can arise in view of the fact that payment was made to the receiver.

Certain claimants paid cash to the officers of the bank. Such cash was placed in the assets of the bank on June 13, the day before the bank closed. The record reveals that a substantial sum of cash was in the vault at the time the receiver took possession of the bank. It is of course presumed that the trust cash was preserved in this cash balance. The decree will provide for the allowance of claims of this kind as being entitled to preference in payment, but the decree will provide for the ultimate determination of the amount to be paid on such claims when it is finally determined what claims are entitled to participate in cash taken over by the receiver. In case the cash taken over by the receiver has heretofore been applied on other claims entitled to preference, such application will not be disturbed but will stand in view of delay in filing claims under consideration. In that event claims of this character will be established as general claims. In the event a portion of the cash taken over by the receiver remains as a result of proration to other preferred claims, such portion will be prorated among claimants, with standing of general claims as to any unsatisfied balance.

Claimants who delivered checks to the officers of the bank fall into three classes: (1) Those who gave checks on their accounts in the bank. (2) Those who gave checks on other Logan banks. (3) Those who gave checks on out of town banks.

So far as those who gave checks on their accounts in the bank are concerned, we have no difficulty in arriving at the conclusion that such claimants are entitled to have their claims allowed as

claims for deposits upon which the receiver will, upon the entry of decree, pay dividends in the percentages already paid on other deposit claims. As to these items the entries made prior to the appointment of the receiver are mere bookkeeping matters which cannot affect the rights of claimants who were, in truth, still depositors as to such amounts. Such book entries did not and could not affect the condition of the bank or change the assets taken over by the receiver.

On June 13, 1928, the check of claimant Fred Brauneisen in the sum of $143.81 was cleared with other checks drawn on Logan banks. In the process of such clearance the Farmers State Bank received $95 in cash. All of this check in excess of $95 has been dissipated, but $95 came into the bank on June 13, 1928. To this extent claimant has traced the proceeds of his check into the funds of the bank and it is presumed that in this amount the fund was preserved in the cash taken over by the receiver when the bank closed the following day. To the extent of $95 the claim is entitled to preference. As to the remainder this claim will be allowed as a general claim. To the extent that the claim is preferred it will share ratably with other claims entitled to participate in cash taken over by the receiver, subject to the conditions herein imposed on those who paid in cash.

The checks of claimants W. L. Yeaman and L. W. Logan were likewise cleared with the bank in Logan on which they were drawn on June 13, 1928. In this clearance process the Farmers State Bank paid to the other bank the sum of $75.97. The record thus shows the dissipation of these checks, in consequence of which such claims will be denied preference but will be allowed as general claims.

The checks drawn on out of town banks were remitted on June 13 to the Council Bluffs Savings Bank. Their total amount was $7,000. Upon the reconciliation of the account in that bank there was a final balance in favor of the Farmers State Bank of Logan of $5,135.80. The Council Bluffs Savings Bank held bills payable of the Farmers State Bank in the sum of $5,000 and rediscounts in the sum of $6,175. It held notes of the Farmers State Bank as collateral of the value of approximately $40,000. Ultimately these matters were adjusted and the collateral was returned to the receiver. In this situation it is obvious that the balance of $5,135.80 came into the possession of the receiver even though it was applied on the obligations of the Farmers State Bank. The claimants who

gave checks on out of town banks are ratably entitled to preference on their claims to the extent of $5,135.80, and in such amount the decree will provide for payment by the receiver without allowance of interest. The decree will provide for payment by the receiver in the view that to the extent of preference the proceeds of the checks have come into the possession of the receiver. As to the balance of such claims the same will be allowed as general claims.

The acts out of which these claims grow took place but a day before the bank closed. In this situation there will be no allowance of interest on any claims allowed, since the appointment of the receiver brings to an end the accumulation of interest.

A decree conforming to the findings above set forth will differ materially from the one entered by the trial court. Counsel for appellees will prepare a complete decree for entry in this court and serve such proposed decree upon counsel for appellant, who shall have 30 days in which to file objections thereto, without elaboration or argument, before the final entry of decree. As thus modified the decree of the trial court will be affirmed.—Modified and affirmed.

MITCHELL, C. J., and CLAUSSEN, EVANS, ANDERSON, DONEGAN, and KINTZINGER, JJ., concur.