MINNESOTA STATE BANK OF AMBOY, BY A. J. VEIGEL, v. LEONARD TABBOTT.[1]

September 25, 1931.

No. 27,865.

[1]Reported in 238 N. W. 53.

*S. B. Wilson, Jr.* and *W. E. Hottinger,* for appellant.

*F. E. Morse,* for respondent.

DIBELL, J.

This is an action to recover an assessment of 100 per cent levied by the district court of Blue Earth county on seven shares of the stock of the Minnesota State Bank of Amboy owned by the defendant, Leonard Tabbott. In a proceeding to enforce the constitutional liability of the stockholders in the bank the assessment was levied. In the case at bar there were findings and direction of judgment for the plaintiff for $700. The defendant appeals from the order denying his motion for a new trial.

The amended answer alleged that 60 per cent of the assessment against the stock of the defendant was paid. Liability for 40 per cent was conceded. As it turned out in the evidence the claim was that the defendant had paid into a trust fund in the bank $420, an assessment of 60 per cent voted by the stockholders, and was entitled to treat it as a payment on the 100 per cent assessment. The issue is whether the defendant paid 60 per cent; or, putting it

otherwise and avoiding all technicality, whether the 60 per cent could be offset against the constitutional liability.

In the determination of the issue there are involved three considerations:

(1) The nature of the assessment on bank stock made by the resolution of the stockholders pursuant to G. S. 1923 (2 Mason, 1927) § 7684.

(2) The nature of the assessment of the double liability of stockholders imposed by art. 10, § 3, of the constitution.

(3) The claim of the defendant that an assessment was made under the statute and that he paid $420 into a trust fund in the bank not to be used unless all the assessments were paid; that only a portion was paid; and that therefore the sum which he paid into the trust fund can be used so far as it will go in payment of the 100 per cent levied in the proceeding to enforce liability under the constitution.

On October 6, 1923, the stockholders of the bank voted an assessment of 60 per cent payable on or before December 6, 1923. If paid the proceeds became assets of the bank. Slette v. Larson, 125 Minn. 263, 146 N. W. 1093; Devney v. Harriet State Bank, 145 Minn. 339, 177 N. W. 460. In N. W. Trust Co. v. Bradbury, 117 Minn. 83, 91, 134 N. W. 513, 515, Ann. Cas. 1913D, 69, the court in referring to the proceeding under § 7684 said:

"It was not a proceeding in the interest of creditors, but rather to place the bank in position for the future transaction of business. And whether the payment thus required to be made was voluntary or involuntary, it served its primary purpose, and on the funds thus acquired the bank was able to reopen its doors."

This is not to be questioned. Leach v. Arthur Sav. Bank, 203 Iowa, 1052, 213 N. W. 772; Blackert v. Lankford, 74 Okl. 61, 176 P. 532; Smith v. Goldsmith, 49 S. D. 580, 207 N. W. 978; Duke v. Force, 120 Wash. 599, 208 P. 67, 23 A. L. R. 1354.

Nor were the stockholders bound to submit to an assessment voted by the majority. The statute, § 7684, et seq. following the

national banking act (12 USCA, p. 98, § 55) prescribes the course to pursue against those who prefer not to pay. If the defendant paid $420 in discharge of the assessment the money was an asset of the bank and not his property, and this action is at an end.

■ The superadded or double liability imposed by art. 10, § 3, of the constitution is different. The 1930 amendment to art. 10, § 3, of the constitution is found in L. 1931, p. 4. And see G. S. 1923 (2 Mason, 1927) § 7669.

The corporate liability imposed by the constitution is not a corporate asset. The proceeds coming from its enforcement are for creditors. In N. W. Trust Co. v. Bradbury, 117 Minn. 83, 88, 134 N. W. 513, 514, Ann. Cas. 1913D, 69, the court referring to the nature of the liability said:

"The corporation itself has no authority over the fund, cannot compel its payment, nor by any act on its part release the stockholders therefrom. It amounts for all practical purposes to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation. It is limited to an amount equal to the par value of the stock held and owned by each stockholder, and exists in favor of the creditors collectively, not severally, and in proportion to the amount of their respective claims against the corporation."

The authorities outside the state are in harmony. We refer to Leach v. Arthur Sav. Bank, 203 Iowa, 1052, 213 N. W. 772, and cases cited in connection therewith in the preceding paragraph. Against this liability a stockholder cannot assert by way of payment or offset an assessment under § 7684, et seq.

■ On January 26, 1927, an order was entered in the district court in the liquidation of the Minnesota State Bank of Amboy levying an assessment of 100 per cent on the seven shares of stock of the defendant. The shares came from his son-in-law, A. F. Kietzer, who originally held 47 shares. Kietzer had acquired his stock from Lee, the president. After Tabbott acquired his seven shares he was elected a director. The 60 per cent assessment voted on October 6, 1923, pursuant to § 7684, was paid only in part. Not

all the stockholders responded. The specific claim of Tabbott is that the receipts from the 60 per cent assessment were put into a trust fund in the bank to be used only in the event all stockholders contributed. The statute does not provide for such a thing. It requires a pro rata assessment. It provides what shall be done if the stockholders do not pay. They are not required to pay if they prefer submitting to the provisions of the statute.

On January 9, 1924, there was upon the books of the bank a credit designated "assessment." The amount of the assessment was $3,740. The assessment of 60 per cent should have been paid on December 6, 1923. If paid it would have produced $9,000, assuming that the outstanding stock was the full amount of the capital of $15,000. The time for payment was past.

On January 9, 1924, Kietzer gave the bank his note for $820, and Lee, the president, gave his note for $1,120. No money passed. There was credited to what we call the assessment fund from these two notes $1,940. It was all on paper. The transaction was between Lee and Kietzer alone, or at least the court could find it so. They were president and vice president. There was no actual cashier. Tabbott was there. There was a credit of $120 placed on the assessment fund to Lee which covered the 60 per cent assessment on his two shares. There was a credit to "L. Tabbott and A. F. Kietzer" for $1,820. The testimony is that the parties understood that $420 was apportioned to the defendant and the balance of $1,400 to Kietzer. Lee was giving Kietzer the benefit of $1,000 of his note of $1,120 because he had sold him the stock. The details are not shown, and they are unimportant. The books at the same time show a credit of $120 on the same fund to one Ellis. Upon this we have no further information, and it is unimportant. Altogether this made at the close of January 9 a credit of $5,800, of which $2,060 had been credited on that day. On the third day thereafter, January 12, 1924, the superintendent took charge of the bank for purposes of liquidation.

The defendant claims that he had $420 in the assessment fund which was a trust fund and that he can now apply that sum on the

$700. We assume that if he had this amount in a trust fund he could apply it or use it as an offset. We assume that under the authority of such cases as Straw & Ellsworth Mfg. Co. v. L. D. Kilbourne B. & S. Co. 80 Minn. 125, 83 N. W. 36; Finch, Van Slyck & McConville v. Vanasek, 132 Minn. 9, 155 N. W. 754, and McCabe Bros. Co. v. Farmers G. & S. Co. 172 Minn. 33, 214 N. W. 764, he could, in an action by the superintendent of banks to recover upon his constitutional double liability, interpose as a payment or offset his interest in the trust fund in the bank.

The claim of Tabbott is that the money paid in response to the 60 per cent assessment was to be put into a trust fund in the bank to be used only in the event that all contributed. There is evidence supporting this claim. It does not appear upon the records of the bank. It does not appear from any writing. The records show that on October 6, 1923, at a special meeting of the stockholders, held for the purpose of voting an assessment of 60 per cent on the capital stock as ordered by the superintendent of banks, such assessment was voted, to be paid on or before December 6, 1923. When the credits were made on January 9, 1924, it is not clear that Tabbott knew just what was to be the effect of it. He knew he was to be relieved of liability; in other words, that he was to be saved from his stock purchase. He did not pay for his stock. It is inferable that Kietzer and Lee undertook to save him from loss and intended to do so by the transaction of January 9, 1924.

Kietzer later went into bankruptcy. He scheduled no unexempt assets. The note to the bank was scheduled as a liability. It does not appear whether he was discharged; neither does it appear that his progress towards a discharge was interrupted. Suit was brought on the Lee note, and it is in litigation.

The parties do not effectively disguise the transaction of January 9, 1924. It was plainly intended to take credit to Tabbott for the $420 without anyone paying money and for the purpose of allowing him to claim a payment or offset on the stockholders' liability by asserting that the bank had $420 of his money in a trust fund. The trial court was not under obligation to find, and did not find, and hardly would be permitted to find, that this paper transaction

originated by the officers of the bank created a trust fund which might be used sometime to pay Tabbott's $420 assessment under § 7684. A month had passed since the payment became due and three months since the assessment was voted. If a trust fund was arranged in October, 1923, as claimed by the defendant, it was not intended on January 9, 1924, three days before the commissioner of banks took charge, that this $420 would be paid under § 7684. At the best the people interested were setting aside $420, nominally under the 60 per cent assessment, that they intended Tabbott would offset against his constitutional liability when it came to be enforced. The trial court was justified in finding that the transaction of January 9, 1924, did not give Tabbott a credit in the trust fund which he could offset against the $700 assessment.

Order affirmed.

WILSON, C. J. took no part.

LORING, J. (dissenting).

There is no question in my mind as to the correctness of the legal principle that a payment of a voluntary assessment voted by the board of directors does not constitute an offset against a claim for a stockholder's double liability. As I read the record, that is not the question here involved. The only question presented by the record is whether or not the transaction on January 9, 1924, amounted to a payment into the assessment trust fund to the credit of defendant. The bank was in need of replenishing its capital, and October 6, 1923, the directors voluntarily levied an assessment of 60 per cent on the stock. The uncontradicted evidence is to the effect that those stockholders who were willing to pay this assessment paid it to their individual credit in a fund which was to be paid over to the bank only upon all stockholders' contributing the whole of their assessments. In other words, it was intended to be a trust fund for a special purpose which was to become part of the bank's assets only upon the fulfilment of certain conditions. Those conditions were never fulfilled. The record indicates that the plaintiff treated the fund thus created not as a payment of the assessment into the bank's assets, but as a trust fund to the credit of

the individual stockholders who had paid cash into the fund. The peculiar "judgment" that plaintiff obtained in the proceedings for the imposition of an assessment on the stockholders' liability gave credit to such stockholders for cash paid into this fund as an offset against their stockholders' liability. Of course the order for the imposition of the assessment was not the proper place in the proceeding to determine the rights of individual stockholders to offsets or other personal defenses, but it conclusively corroborates defendant's trust fund theory. Defendant's credit in this fund arose, not out of a payment of cash by him, but in consequence of a part of the proceeds of Lee's note to the bank being credited to him in the fund. Lee's note was for $1,120. One hundred and twenty dollars of this was credited to Lee on his own stock. One thousand dollars was credited to Kietzer and defendant. Kietzer gave his own note of $820 more. For all practical purposes Lee borrowed $1,120 from the bank and paid it into the assessment fund. His note became an additional asset of the bank. A receipt was issued by the bank to the defendant for the $420 credited to him in the assessment fund, and the record shows the plaintiff has sued Lee on the note which went into the general assets of the bank at the time credit was given defendant. The plaintiff is therefore trying to collect the same $420 twice, once from Lee and now from defendant upon a theory wholly inconsistent with that by which the cash-paying stockholders were credited with the 60 per cent which lay in the trust fund.

The plaintiff asserts that the Lee note should not be considered as payment until the note is paid. That rule might apply between maker and payee; but here the note of a third person was taken by the payee, credit given defendant for a portion thereof, and a receipt given by the payee which characterized the acceptance of the note as payment. This receipt to defendant acknowledged payment of $420, "60% assessment on 7 shares of Minn. State Bank stock." The trial court ruled out this receipt. I think this was error. The receipt characterized the transaction and was material evidence tending to prove that the Lee note was treated as a payment. Plaintiff's subsequent action in suing on the note also characterizes the transaction as a payment. I also think it was error

not to permit Kietzer to give his explanation of the entries which were claimed to represent payment by Tabbott into the trust fund.

I do not see any indication of fraud in the action of the parties concerned. They put notes into the bank which increased its assets. They took no money from the bank; and if it had remained open until the other stockholders paid their assessment, the fund would have been turned into the assets of the bank and they would have had no offset to a subsequent claim on their stockholders' liability. There is absolutely not a syllable in the record indicating fraud or bad faith or a purpose to shield defendant from liability in a fraudulent way. The record is innocent of support for the assertion that the transaction was intended to take credit to Tabbott for the $420 without anyone paying money and for the purpose of allowing him to claim a payment or offset on his stockholder's liability. The bank accepted the note and placed it in its assets, and plaintiff is still treating it as a valid obligation. Lee borrowed the money and promised to repay it on a certain day. The disposition of the money to defendant's credit was treated as a payment of cash into the fund. That four or five years later Kietzer became a bankrupt and Lee resists payment does not change the character of the transaction and should not prejudice defendant's rights. That the transaction occurred three days prior to the closing of the bank does not, on the record before us, tinge it with suspicion, but rather indicates that they were still hoping to collect the 60 per cent assessment and save the bank. Directors are notoriously unwilling to believe their bank insolvent, and I find no evidence in the record indicating that Lee and Kietzer or defendant were endeavoring to cheat the bank's creditors out of any part of defendant's stockholder's liability. A statement to that effect must rest entirely on speculation.

Lee and Kietzer were obligated to defendant under their agreement to take care of any assessments against defendant's stock, and it was in fulfilment of this obligation that they gave their notes to the bank and caused the credit to be given to defendant in the assessment fund. Plaintiff as successor to the bank has retained the benefits of this transaction and is endeavoring by suit

to collect the Lee note. He cannot do this and at the same time repudiate the transaction by which his predecessor obtained the note. Dickinson v. Citizens I. & F. Co. 139 Minn. 201, 165 N. W. 1056.

In my opinion the order appealed from should be reversed.

OLSEN, J. (dissenting).

I concur in Mr. Justice Loring's dissent.

[1]Reported in 238 N. W. 161.