ROBERT L. LEACH, State Superintendent of Banking, Appellee, v. ARTHUR SAVINGS BANK, Appellee; J. J. SMITH et al., Appellants.

**BANKS AND BANKING:** Insolvency—Stockholders—Double Liability
1 **Not Subject to Offset.** Funds voluntarily paid into a bank by a stockholder thereof, in order to *repair or make good the impaired capital* of the bank while it is a going concern, may not later, and after the bank has become insolvent and has passed into the hands of a receiver, be offset by the stockholder against the demand of the receiver for a 100-per-cent assessment on the stock *for the benefit of the creditors.*

**BANKS   AND   BANKING:**   Stockholders—Liability—Constitutional
2 **Provision.** Principle reaffirmed that Art. 8, Sec. 9, of the state Constitution, in declaring the liability of stockholders in banks, has reference solely to banks of issue.

Headnote 1:. 7 C. J. p. 517.   Headnote 2:   7 C. J. p. 502.

Headnote 1: 23 A. L. R. 1367.   Headnote 2: 3 R. C. L. 397.

*Appeal from Ida District Court.*—J. A. HENDERSON, Judge.

## MAY 10, 1927.

Action to recover from the stockholders of the Arthur Savings Bank on a liability created by statute. From decree in favor of the plaintiff three of the defendant stockholders appeal. —*Affirmed.*

*Clark & Clark,* for appellants.

*Snell Brothers,* for appellee.

ALBERT, J.—On the 23d day of April, 1924, Leach, as superintendent of banking, was appointed receiver of the Arthur Savings Bank, of Arthur, Iowa. On that date he qualified, and

**1. BANKS AND BANKING: insolvency: stockholders: double liability not subject to offset.** assumed his office as such receiver, and proceeded to liquidate the assets of said bank. On the 5th day of August, 1924, such receiver filed his petition, making all stockholders parties defendant, alleging the insolvency of the bank and the insufficiency of the assets to pay the claims, and asked that he have judgment against each of the named stockholders (some 26 in number) for an amount equal to 100 per cent of each share of the stock held by the respective stockholders. As indicated above, the court gave judgment according to the prayer of plaintiff's petition, and three of the stockholders, Smith, Clifford, and Hartong, appeal therefrom. They filed separate answers in the trial, and pleaded that, on or about the 9th day of October, 1923, they were advised that in the assets of said bank was something like $23,000 of worthless paper, and that it must be immediately charged off the books of the bank. This conclusion was reached after a conference between a representative of the office of the superintendent of banking and a number of the officers and stockholders of the bank, among whom were the three parties who are appellants herein. It seems to have been agreed among them that the paper above referred to was worthless. It was then arranged that $23,000 should be raised in cash, and an equal amount of bad paper taken out of the bank, which was done. To this sum of $23,000 they contributed as follows: Smith, $7,233; Clifford, $5,641.74; Hartong, $1,157. There is little dispute in the testimony, and what conflict there is, as we view the case, is of no materiality. Briefly stated, in addition to the above facts, it appears that, in the early part of April, 1923, this bank was examined by one of the employees of the superintendent of banking; that, when this worthless paper was discovered, the banking department insisted that it be removed from the assets of the bank. An inquiry was then made by the parties interested as to how it should be done. The examiner suggested that there were two ways in which the matter could be taken care of: there could be a general assessment on all of the stock, or the directors could assess their own stock, taking out the bad paper and replacing the same with cash. The inference, however, was that, if this matter were not taken care of, the bank would be closed. It was suggested by the examiner that the first plan proposed, of assessing all of the stockholders, was unwise, in view of the general

financial situation in the state. He told them to use their best judgment as to which plan they would follow, but advised that they put in the money, and not make a general assessment on the stockholders. The result of the conference was that the board of directors decided that they would share in raising this $23,000 in cash in proportion to the stock held by them; and this was done. A letter was addressed to the superintendent of banking at Des Moines, Iowa, signed by the active board of directors and one D. H. Hedrick, a heavy stockholder, in which it was recited, among other things, that the bank was in such condition that it needed immediate attention and adjustment, and that there was $22,369.70 of worthless paper, and doubtful paper to the amount of $11,007.65; that, owing to the large number of stockholders (over 60 in number), an assessment of all of the stockholders might be greatly detrimental to the institution; that the board of directors and Hedrick "hereby agree that within one week from this date we shall place in the assets of this bank sufficient cash to remove the known losses of $22,369.70 as listed by your examiner, and further as giving your examiner today a guarantee by members of this board and Mr. Hedrick on all these lines listed as doubtful together with certain of the items listed as dangerously slow, said guarantee to continue in force and effect for a period of three years. Trusting that your department will approve of this action and assuring you that we appreciate the attitude of helpfulness of your department and examiner we are, yours very truly."

This letter is signed by Hedrick and the acting directors, and among the signatures are the names of the appellants herein. It was written on October 4th, a few days before the money (the $23,000) was paid in, as above set out. The times when these transactions occurred become material only by reason of the contention made by appellants herein. This money was paid in about the 9th of October, 1923, and the receiver was appointed on the 23d day of April, 1924. The defenses made by these respective appellants were that the amounts of money paid in by them at this time, in October, 1923, should be offset against their statutory liability which the receiver is here seeking to enforce. It is their claim that they were coerced by the banking department into making these payments, and that the bank was at all times insolvent, and that these payments were not required to be

made in good faith, but simply for the purpose of increasing the amount of money in the bank for liquidation purposes. Or, to put it another way, it is claimed that the action of the state department, in inducing these parties to pay in this money, was not in good faith, but that the state department at all times had an intention to liquidate the bank, and that this was simply a means of augmenting its assets for that purpose.

Whether such matters, if proven, would constitute a defense, or would entitle the stockholders to an offset against the superadded liability provided by statute, is a matter upon which we express no opinion, as there is no evidence in the record to support this contention.

Both briefs refer to and discuss Section 9, Article VIII, of the Constitution of this state, which section provides for the superadded liability of the stockholder to the creditors of the bank. With this section of the Constitution we have no concern, as the former decisions of this court are that this constitutional provision refers only to banks of issue, of which we have none in the state at the present time. *Allen v. Clayton,* 63 Iowa 11; *State v. Union Stock Yards State Bank,* 103 Iowa 549. To determine the liability, therefore, of the stockholders of these banking corporations, we must resort to the Code provisions. Section 1882, Code of 1897, reads as follows:

2. BANKS AND BANKING: stockholders: liability: constitutional provision.

"All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders; and should any such association or corporation become insolvent, its stockholders may be severally compelled to pay such deficiency in proportion to the amount of stock owned by each, not to exceed the extent of the additional liability hereby created. * * *"

It is conceded in this case that the assets of the bank in the hands of the receiver are insufficient to pay its outstanding liabilities, and that the payment in full by each of the stockholders of an amount equal to the par value of the stock held by him, added to the present assets of the bank, would not be sufficient to make such payment. Under the above section of the statute, in the

liquidation of these insolvent banks, when it is found that the assets of the bank are not sufficient to pay its liabilities, recourse is to be had to this superadded liability provided by statute, and the limit fixed by the statute on this superadded liability is 100 per cent of the face value of the stock held by the respective stockholders; and, if this 100 per cent in value is needed to pay the liabilities of the corporation, then the statute authorizes its collection. It is not, in a true sense, an assessment, but is a statutory liability.

The stipulated facts in this case warrant the conclusion that, under the plain wording of this statute, these stockholders were individually liable for the amount ascertained by the court and charged by the court against them. The fund thus created from the enforcement of this liability ''shall be distributed equally among all the creditors of such corporation in proportion to the several sums due them.'' Section 1883, Code of 1897.

It is the contention of appellants, however, that they should be entitled to offset, as against this liability, the respective amounts paid in by them in October previous to the appointment of the receiver.

Section 1878, Code of 1897, reads as follows:

''Should the capital stock of any state or savings bank become impaired by losses or otherwise, the auditor of state may require an assessment upon the stockholders, and shall address an order to the several members of the board of directors of such bank, fixing the amount of assessment required, and the board of directors shall, within thirty days after the receipt of such order, cause such deficiency to be made good by a ratable assessment upon the stockholders for the amount of stock held by them, by giving such stockholders notice in writing, signed by the president or vice president, attested by the cashier or secretary of the bank, under its seal, if it have one, and deposited in the post office, addressed to the last known residence of the stockholders, proof thereof to be made by the affidavit of the person so making the deposit, which notice shall state the entire sum to be raised, and the amount due from the addressed stockholder.''

Section 1879 provides that the assessment thus made shall be paid within 90 days, and that, if it is not paid, enough of the capital stock held by him shall be sold at public auction to pay the same.

Section 1880 provides that, if the board of directors refuse to proceed to make the assessment as above indicated within 30 days, they are made severally liable for any deficiency, and that such liability may be enforced at law by any creditor of or stockholder in the bank, or a receiver appointed to wind up its affairs.

It will be noticed that, under these sections for making an assessment to rehabilitate impaired capital, there is no personal liability created as against the stockholder (under Chapter 181, Acts of the Forty-first General Assembly, a personal liability is created for a deficiency) ; while, under Section 1882, the liability provided is a personal liability. The most that could happen to the holder of stock under which an assessment had been made under Section 1878 and the following sections is that, if he wished to keep his capital stock, he must pay the assessment; otherwise, if he failed, neglected, or refused to pay his assessment, he lost a sufficient amount of his capital stock to pay such assessment, but he was not made personally liable for such assessment. This is the distinction between the effect of Section 1878 and its companion sections, providing for assessments against the stock, and the superadded liability provided for by Section 1882. Or, to put it another way, the assessment statute is for the purpose of raising funds to continue the bank in operation, while Section 1882 carries a liability for liquidation purposes only, which can never be called into operation until the bank has passed into the hands of a receiver.

The claim by appellants herein, that, as against their statutory liability, they are entitled to offset the amount paid in by them on what they choose to call "an assessment," made in October previous, is not tenable. The two sections of the statute carry separate liabilities. The question is not novel in the law, and has been passed upon by other courts. The assessment made under Section 1878 is purely for the benefit of the bank itself and its stockholders, while the liability created under Section 1882 is wholly for the benefit of the creditors of the banking corporation. The latter liability constitutes a fund available only when the bank is insolvent, and unable to meet its obligations in full. The corporation itself can derive no benefit from the fund, and, as a corporation, cannot compel its payment, or any part of it.

It follows, therefore, that, if the money paid in by these appellants had been paid under the proceedings marked out for rehabilitating the capital of the bank provided for in said Sections 1878 and 1879, it could in no way satisfy or be set off against the superadded liability provided for in Section 1882. 3 Ruling Case Law 397; *Northwestern Trust Co. v. Bradbury,* 117 Minn. 83 (134 N. W. 513). In that case, the superadded liability of the stockholder is provided for in the Constitution of the state, and in discussing this question the court said, *inter alia*:

"The constitutional liability of stockholders in banking corporations was designed solely for the benefit of creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full. The corporation itself has no authority over the fund, cannot compel its payment, nor by any act on its part release the stockholders therefrom. It amounts, for all practical purposes, to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation. It is limited to an amount equal to the par value of the stock held and owned by each stockholder, and exists in favor of the creditors collectively, not severally, and in proportion to the amount of their respective claims against the corporation."

In the case of *Blackert v. Lankford,* 74 Okla. 61 (176 Pac. 532), the Oklahoma court had before it the identical question we have here, under similar statutes to those in this state. There, as here, there was an attempt to set off a previous assessment, made several months before, against the superadded liability. After discussing the question, the court reaches a conclusion as follows:

"After a careful consideration, we are of the opinion that the plaintiff in error is not entitled to a credit for the 60 per cent assessment paid by him upon the capital stock of said bank owned by him * * * the trial court was unquestionably correct in denying to him the right to have a credit therefor."

The Federal rule is fully elaborated in the cases of *Scovill v. Thayer,* 105 U. S. 143 (26 L. Ed. 968), and *Delano v. Butler,* 118 U. S. 634 (30 L. Ed. 260), where it is said:

"If the claim in the present case were allowed, it would follow that, in every case, payments made by stockholders for the purpose of restoring the impaired capital would be consid-

ered as credits on the ultimate individual responsibility of shareholders * * *. The obligations of the shareholders under the two sections are entirely diverse, and payments made under Section 5205 cannot be applied to the satisfaction of the individual responsibility secured by Section 5151."

The two sections referred to in the above entitled case are similar to the provisions of the Iowa statutes. See, further, *Farmers St. Bank v. Reed,* 114 Kan. 216 (217 Pac. 320) ; *Duke v. Force,* 120 Wash. 599 (with elaborate note thereto, in 23 A. L. R. 1354, 1367).

We conclude, therefore, that, where an assessment is made to repair impaired capital of a bank, and later, in the liquidation of the bank, the superadded liability provided by the statute is being enforced, the stockholder is not entitled to credit on this superadded liability for the amount he paid on the former assessment, to repair the capital stock of the bank, where the assessment was made in pursuance of the provisions of the statute. In the case at bar, we do not have exactly this condition, because the superintendent of banking did not order the assessment to be made, nor were any of the provisions of the statute providing for the same complied with. In one sense, the provisions of this statute are coercive. There is no question raised as to its constitutionality. The payments made by these parties, which they have chosen to call "an assessment," were purely voluntary on their part, and made for the purpose of repairing the impaired capital of the bank. Having voluntarily made the same on their part, for the purpose of continuing the bank in operation, they stand in exactly the same position as though they had made these payments under a valid statutory assessment. In other words, at that point they stood in the position where, if the impaired capital stock were not repaired, liquidation must necessarily follow. They chose to contribute this cash, to the end that the bank might continue as a going concern; and, having so done, they do not stand in any different relation in this matter than they would have been in, had a statutory assessment been made.

We conclude that, so long as they would not have been entitled to offset these payments against their statutory liability, they were in no better position when they voluntarily made these contributions to continue the bank in operation, than they would have been in, had they paid it under an assessment made under

the statute. The district court was right in its ruling in refusing to allow these appellants to offset the money paid by them in October, 1923, against the superadded statutory liability which is sought to be enforced in this case.—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, DE GRAFF, VERMILION, MORLING, and KINDIG, JJ., concur.