L. A. ANDREW, State Superintendent of Banking, Appellant, v. FARMERS STATE BANK OF LOGAN et al., Appellees.

No. 40456.

MAY 5, 1931.

John Fletcher and Roy E. Havens, for appellant.

Bolter & Murray, for appellees.

DE GRAFF, J.—There is but one question involved, and that relates to whether the stockholders, defendants and appellees, were liable to an assessment for stock owned by them in the Farmers State Bank, of Logan, after the institution closed its doors and went into the hands of a receiver. For some years before June 14, 1928, the Farmers State Bank, of Logan, was an Iowa banking corporation, duly organized and operating. While the bank was thus existing and operating, the Iowa state superintendent of banking, on December 26, 1927, under authority of Section 9246 of the 1927 Code, ordered the bank directors to levy an assessment of one hundred per cent on the stock because the institution's capital was impaired. Complying with that order, the bank directors, on January 22, 1928, levied the assessment as provided by Section 9247 of the same Code. Notices of that assessment were duly served upon the stockholders, who, in response thereto, delivered to the institution money, checks, and notes for the purpose of paying the assessment ordered by the superintendent of banking.

It is contended, however, by the stockholders, appellees,

that the delivery of the said notes, checks, and money was made upon the express condition that the stockholders would not be liable for another assessment under Section 9251 of the 1927 Code. To state the thought differently, appellees claim that the notes, checks, and money were delivered to the bank to be held by it in trust until it could be determined whether the institution would remain a going, solvent concern. If it could not continue as a solvent bank, appellees assert the money, checks, and notes were to be returned to them.

This contention on the appellees' part, of course, is denied by the appellant. The superintendent of banking, now receiver of the institution, says that there never was such an agreement with the stockholders; that neither he nor the bank ever had such an agreement with them. Consequently, the appellant maintains that the stockholders delivered the notes, checks, and money into the bank in compliance with the assessment made January 22, 1928, under Section 9246, supra. However that may be, the bank failed on June 14, 1928, and the superintendent of banking was duly appointed receiver of the institution. He is now the appellant.

So, in compliance with Section 9251, the appellant commenced the present proceeding to collect from the appellees one hundred per cent on the stock held by each for the benefit of the bank's creditors. Section 9251 of the 1927 Code contains the following language:

"All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders."

By way of defense to the present action, the stockholders, appellees, interpose the alleged conditional agreement aforesaid. To overcome that defense, appellant not only denies the agreement's existence, but further alleges that if it does exist the same is void because such understanding is against public policy and gives rise to an ultra vires contract. Evidence upon those issues is set forth in the abstract. Manifestly the superintendent

of banking did not agree to the conditional delivery of the notes, checks, and money.

A more serious question arises, however, concerning whether the bank itself made such an agreement with the stockholders. Many of the facts and circumstances rather indicate that such an agreement was not made, but for the purposes of this case, we shall assume, without deciding, that the agreement did exist. Nevertheless, there is a reason why appellees' defense is not sufficient to prevent a judgment against the stockholders for a one hundred per cent assessment under Code Section 9251, supra. Such reason does not include the reply predicated upon public policy or an ultra vires contract.

This reason may be explained by the use of two hypotheses: First, it is assumed that the notes, checks, and money were paid in satisfaction of the first assessment under Section 9246 of the Code; and, second, it is supposed that the notes, checks, and money were not so deposited but were given to the bank in trust to carry out the purposes alleged by appellees.

I. If the notes, checks, and money were paid into the bank under an assessment to repair depreciated capital under Section 9246, then such payment does not preclude another assessment under 9251 of the same Code. Leach v. Arthur Savings Bank, 203 Iowa 1052; Andrew v. Farmers Trust & Savings Bank of Charles City, 204 Iowa 243; Andrew v. Bevington Savings Bank, 206 Iowa 869; Andrew v. Peoples State Bank of Humboldt, 211 Iowa 649. After the assessment was made on January 22, 1928, for the purpose of supporting the impaired capital, the bank continued as a going concern until June 14, thereafter. Many things might have happened in the interim to change the institution from solvency into insolvency. Hence, if the money, notes, and checks in question were paid under that assessment, the same were given to the bank for the purpose of repairing its depreciated stock rather than for liquidation purposes under Section 9251 of the 1927 Code. During the discussion in Andrew v. Peoples State Bank of Humboldt, 211 Iowa 649, supra, reading on page 658, we said:

"For the purpose of applying Section 9251, a bank is deemed solvent while it is a going concern. As a going concern it remains in full control of its assets and administers the same

by its own corporate officials. The liability of the stockholder under Section 9251 accrues when the corporate bank ceases to be a going concern. Up to that point of time the corporate bank pays all demands upon presentation. When it fails to meet such demands, its doors close.''

Predicated upon the same premise is our statement in Andrew v. Bevington Savings Bank, 206 Iowa 869, reading on pages 873 and 874:

''Complaint is made because the district court allowed the second assessment under a record not justifying the same. More definitely, appellant's objection is that the bank transacted no business during the interim between the first assessment and the court's designation of the receiver. Thus the proceeds of the first assessment, he says, were for mere liquidating purposes. Only one object can authorize that assessment, and this is to strengthen the impaired capital, as contemplated under Section 1878 of the 1897 Code (now Section 9246 of the 1927 Code). However, substantiation exists in the record for the conclusion that, when the assessment was made, there was no thought of winding up the bank's affairs; but, on the contrary, the idea undoubtedly was to restore the impaired capital so and in order that the institution could continue as a going concern. Business was transacted during the period mentioned. Clearly, then, the first assessment was not authorized or made for mere liquidation purposes. * * * By the establishment of this fact, the way is paved to reach the conclusion that the second assessment, contemplated in Section 1882 of the 1897 Code (now 9251 of the 1927 Code), was permissible, even though there had been a previous assessment under Section 1878 thereof (now Section 9246). One is to restore the bank's capital, and the other is for the benefit of certain creditors.''

Therefore, assuming that in the case at bar the notes, money, and checks were paid into the bank and appropriated by that institution in compliance with an assessment made January 22, 1928, under Section 9246 of the statute, those funds cannot under any circumstances after receivership be held to satisfy the assessment contemplated in Section 9250 of the Code. Under the

first assumption, therefore, appellees' answer did not set forth a defense to appellant's claim.

II. Conceding that the notes, money, and checks were paid into the bank by the stockholders, not for the purpose of satisfying an assessment under Section 9246, but rather to be held in trust, even then a defense to appellant's cause of action does not appear.

In order that appellees' position may be understood, it is repeated here. They claim that the notes, money, and checks were deposited with the understanding that they were to be held until the institution's solvency or insolvency finally could be determined. When that determination was made, the funds were to be disposed of accordingly; that is to say, if the institution could not be saved, the deposit was to be returned to the stockholders. But, on the other hand, if the bank with the assessment could continue as a going concern, then the deposit should be retained by the institution.

Obviously that trust agreement could in no way afford a defense to appellant's cause of action. Appellant here is seeking to recover a one hundred per cent assessment against the stockholders under Code section 9251, before quoted. That assessment is not for the banking corporation, but rather for its creditors. The bank can in no way use the proceeds of the assessment under Section 9251. Such assessment in full is for the creditors of the insolvent institution. See cases above cited. So appellant, as the receiver, is entitled to a judgment against the appellee stockholders in behalf of the bank's creditors. Appellees, as stockholders, under the alleged trust agreement may have a claim against the banking corporation, as such; but that can in no way interfere with appellant's right to obtain judgment against the stockholders in behalf of the creditors under Section 9251, supra. These creditors are entitled to the proceeds from the assessment under Section 9251 regardless of the source from which appellees may pay the same.

It may be true that appellees have a preference against the bank's assets because of the alleged trust, and through that preference they may be able to satisfy the assessment due the creditors; but in any event that possibility does not prevent the appellant from obtaining judgment against the appellees in behalf of the creditors. Following the judgment, appellees may

procure the funds to pay it through the contemplated preference against the bank's assets or in any other way open to them. Although such resources may be open to the appellees, yet the existence of the same does not prevent the appellant from obtaining judgment under section 9251, supra. Under that section, appellees are not liable to the bank, but rather their individual liability is "to the creditors."

Appellees' claims against the bank, therefore, cannot in any way jeopardize or prejudice the rights of the creditors to claim of appellees, through appellant, the liability created by Section 9251 of the Code.

Therefore, under neither hypothesis, above discussed, do appellees have a defense against appellant's claim. No other defense is pleaded by appellees. Therefore the appellant is entitled to judgment against them as prayed.

Wherefore, the judgment and decree of the district court, should be, and hereby is, reversed.—Reversed.

All Justices concur, except STEVENS and ALBERT, JJ., who take no part.