D. W. Bates, Superintendent of Banking, Appellee, v. Clarion Savings Bank et al., Appellants.

No. 42175.

January 9, 1934.

Mitchell & Mitchell and Stowe & Kirchner, for appellant R. E. Courson.

Nagle & Hill, for appellee.

Donegan, J.—The Clarion Savings Bank of Clarion, Iowa, was a banking corporation created and operating under the laws of the state of Iowa. In July, 1930, the state superintendent of banking notified the bank that corrections would have to be made in the set-up of the bank's assets, and the board of directors of the bank were summoned to Des Moines for a personal conference with the examiner in chief. Following this conference the matter of meeting the requirements of the state banking department was taken up with R. E. Courson, as the agent of his mother, Clara M. Courson, who was the owner of 78 shares of the capital stock of the bank, and with O. P. Morton, who was a director of the bank and the owner of 45 shares of its capital stock. As a result of these negotiations, it was finally arranged that Clara M. Courson would pay $7,800, and that

Mr. Morton would pay $4,500 into the undivided profit account of the bank. The payment in behalf of Mrs. Courson was made by the execution and delivery to the bank of a note for $7,800, in accord-. ance with the terms of a written agreement signed by the president and cashier of the bank with the approval of the banking department. This written agreement contained a brief description of lines of credit which the bank had extended to some of its customers, and which it was therein agreed should be reduced, and also contained the following provision:

"We agree to the full limit of our power to meet in every way the recommendations and demands set out relative to the foregoing credit lines and will to the best of our ability make the collections suggested therein or obtain the security demanded, in consideration of the contributions made by O. P. Morton and R. E. Courson in cash to avoid the assessment that would otherwise have been necessary."

Some time after the note for $7,800 of Mrs. Courson had been delivered to the bank, $1,000 was paid thereon and a new note for $6,800 was executed and delivered to the bank. This note for $6,800 was afterwards assigned as collateral to the Iowa Des Moines National Bank to secure money borrowed from said bank by the Clarion Savings Bank, and was in the possession of said Iowa Des Moines National Bank at all times thereafter.

On the 28th day of July, 1931, the bank closed its doors, and in due time L. A. Andrew, state superintendent of banking, was appointed receiver and took possession for the purpose of liquidation.

It appearing that the liabilities of the bank exceeded its assets in approximately the sum of $83,000, and that the amount of the capital stock outstanding was $50,000, the receiver brought an action in equity to enforce the statutory 100 per cent liability against each of the stockholders, including R. E. Courson, as administrator of the estate of Clara M. Courson, who had died prior to the commencement of this action. The defendant Courson, as administrator of the estate of Clara M. Courson, deceased, answered, alleging that the $7,800 paid to the bank was not a voluntary assessment, that it was paid to the bank pursuant to the agreement signed by the president and cashier of the bank at that time, which agreement the bank had failed to carry out, thus causing a constructive trust to come into

existence as to the $1,000 cash and the note for $6,800, and that $7,800 was thus held by the bank in trust and should be allowed as an offset on the stock assessment. The trial court held that under the statutes of this state the double liability was for the benefit of creditors of the bank, and that the advancement made to the bank by Mrs. Courson could not be allowed as a defense or offset against such statutory liability. From this decree of the trial court, the defendant R. E. Courson, as administrator of the estate of Clara M. Courson, appeals.

Appellant presented and argued several propositions upon which he relies for reversal. If, however, as held by the trial court, the defense set up by the appellant cannot be considered and the advancement made by his decedent cannot be offset against her statutory liability as stockholder, this is decisive of the case as far as this appeal is concerned.

Sections 9246 and 9251, of the Codes of 1927 and 1931, are as follows:

"9246. * * * Should the capital stock of any state or savings bank become impaired by losses or otherwise, the superintendent of banking may require an assessment upon the stockholders. and shall address an order to the several members of the board of directors of such bank, fixing the amount of assessment required. '

"9251. * * * All stockholders of savings and state banks shall be individually liable to the creditors of such corporation of which they are stockholders over and above the amount of stock by them held therein and any amount paid thereon, to an amount equal to their respective shares, for all its liabilities accruing while they remained such stockholders."

In the case of Leach v. Arthur Savings Bank, 203 Iowa 1052, 213 N. W. 772, a stockholder who had made an advancement to the bank, in order to make good the impaired capital of the bank while it was a going concern. was sued by the receiver upon his statutory double liability. He set up the advancement made by him as a defense and asked an offset to the extent of such advancement. It was claimed by the stockholder that he was induced to make such advancement by the banking department in bad faith and that the department at all times had an intention to liquidate the bank and had simply secured such advancement as a means of augmenting the bank's assets for that purpose. The statutes involved in that case

were sections 1878 and 1882, of the Code of 1897, which were prac-
tically the same in their provisions as the statutes now in force and
above set forth. In that case we distinguished the provisions of
these two statutes and held that a payment made upon an assess-
ment to make good the impaired capital of a bank could not be set
up as an offset against the double liability of the stockholder in case
of insolvency, and that the same rule would apply where an ad-
vancement was made voluntarily for the purpose of repairing the
impaired capital and said:

"The claim by appellants herein that, as against their statutory
liability, they are entitled to offset the amount paid in by them on
what they choose to call 'an assessment' made in October previous,
is not tenable. The two sections of the statute carry separate lia-
bilities. The question is not novel in the law, and has been passed
upon by other courts. The assessment made under section 1878 is
purely for the benefit of the bank itself and its stockholders, while
the liability created under section 1882 is wholly for the benefit of
the creditors of the banking corporation. The latter liability con-
stitutes a fund available only when the bank is insolvent and unable
to meet its obligations in full. The corporation itself can derive no
benefit from the fund, and, as a corporation, cannot compel its pay-
ment, or any part of it. * * * We conclude, therefore, that,
where an assessment is made to repair impaired capital of a bank,
and later, in the liquidation of the bank, the superadded liability
provided by the statute is being enforced, the stockholder is not en-
titled to credit on this superadded liability for the amount he paid
on the former assessment to repair the capital stock of the bank,
where the assessment was made in pursuance of the provisions of
the statute. In the case at bar, we do not have exactly this condition,
because the superintendent of banking did not order the assessment
to be made, nor were any of the provisions of the statute providing
for the same complied with. In one sense, the provisions of this
statute are coercive. There is no question raised as to its consti-
tutionality. The payments made by these parties, which they have
chosen to call 'an assessment,' were purely voluntary on their part,
and made for the purpose of repairing the impaired capital of the
bank. Having voluntarily made the same on their part for the pur-
pose of continuing the bank in operation, they stand in exactly the
same position as though they had made these payments under a

valid statutory assessment. In other words, at that point they stood in the position where if the impaired capital stock were not repaired, liquidation must necessarily follow. They chose to contribute this cash to the end that the bank might continue as a going concern, and, having so done, they do not stand in any different relation in this matter than they would have been in, had a statutory assessment been made."

In Andrew v. Farmers Trust & Savings Bank, 204 Iowa 243, 213 N. W. 925, 56 A. L. R. 521, an action was commenced by the state superintendent of banking as receiver of an insolvent bank to recover a 100 per cent assessment on the stock against the owners thereof. The trial court declared that a 50 per cent assessment to restore impaired capital, which had been paid by stockholders prior to the closing of the bank, should be considered in determining the amount due from such stockholders upon their double liability after insolvency, and that they should be required to pay only 50 per cent upon their statutory double liability. This court again distinguished the purpose and effect of the two sections of the Code of 1897, and said:

"This step [assessment to restore impaired capital] was not taken in the interest of creditors, but rather to place the bank in a position for the further transaction of business. We may assume that the assessment, under resolution of the board of directors, served its primary purpose, but, as stated, there is no proof in the case for what specific purpose the assessment was used. We cannot assume that the payment of money by a stockholder to a corporation to meet its ordinary functions as a bank imports that it was used to pay debts for which the stockholder is liable under statutory provisions. A claim against the corporation does not exist in the same right or interest as a claim against a statutory fund arising from the enforcement of the stockholders' liability. * * * Creditors and depositors are not responsible for the management of the bank or the conduct of its business, nor is the impairment of its capital or its subsequent insolvency chargeable to them. A stockholder of a bank, under no circumstances, may be viewed as preferred, and he may not, by a voluntary payment to enable the bank to keep open its doors, discharge his liability as defined by the provision of the statute quoted in the first part of this opinion."

In Andrew v. Bevington Savings Bank, 206 Iowa 869, 221 N. W. 668, while the bank was still a going concern, an assessment was made to restore impaired capital. The bank was later closed and the receiver sued to establish the stockholders' double liability. It was contended by a defendant-stockholder that the bank had transacted no business after the payment by him of the first assessment, and that the attempt to make an assessment on his statutory double liability was, therefore, invalid. In connection with this contention we said:

"Complaint is made because the district court allowed the second assessment under a record not justifying the same. More definitely, appellant's objection is that the bank transacted no business during the interim between the first assessment and the court's designation of the receiver. Thus the proceeds of the first assessment, he says, were for mere liquidating purposes. Only one object can authorize that assessment, and this is to strengthen the impaired capital, as contemplated under section 1878 of the 1897 Code. However, substantiation exists in the record for the conclusion that, when the assessment was made, there was no thought of winding up the bank's affairs; but, on the contrary, the idea undoubtedly was to restore the impaired capital so and in order that the institution could continue as a going concern. Business was transacted during the period mentioned. Clearly, then, the first assessment was not authorized or made for mere liquidation purposes. * * * By the establishment of this fact, the way is paved to reach the conclusion that the second assessment contemplated in section 1882 of the 1897 Code was permissible, even though there had been a previous assessment under section 1878 thereof. One is to restore the bank's capital, and the other is for the benefit of certain creditors."

In Andrew v. Peoples State Bank of Humboldt, 211 Iowa 649, 234 N. W. 542, suit was brought by the receiver to enforce the 100 per cent statutory liability. A stockholder, who had paid a 50 per cent assessment levied to restore impaired capital while the bank was a going concern, alleged that the fifty per cent paid by him was on an involuntary assessment and that he should be entitled to credit on his liability as a stockholder. This court again referred to the distinction between the statute providing for an assessment to restore impaired capital and the statute providing for the stockholder's double liability and said:

"It may be added here that the provision of section 9251 is intended for the protection of creditors in the event of insolvency of the corporation. It is available only in case of insolvency and only in favor of then existing creditors. It is never available to the corporation as such. The provision of section 9246 et seq. is intended for the benefit of the corporation, as such, and as a going concern. Whether the legislative body has exceeded its power in the enactment of this legislation is a question not involved herein. If it were so held, such holding would not aid the defendant in his present defense. If the levy of assessments upon the stockholders of a going concern were held to be in excess of legislative power, yet the collection of such assessments could not satisfy in whole or in part the obligation provided for in section 9251. The beneficiaries of the two statutes are not identical. An improper award to one beneficiary could not satisfy either in whole or in part the legitimate demand of the other."

From the cases above cited, it is apparent that payments or advancements by stockholders prior to the insolvency of a bank, whether made in response to an assessment or by voluntary arrangement with the bank, cannot be allowed as a defense to or as an offset against the statutory double liability sought to be enforced by the receiver after insolvency. As said in Andrew v. Peoples State Bank of Humboldt, supra:

"The beneficiaries of the two statutes are not identical. An improper award to one beneficiary could not satisfy either in whole or in part the legitimate demand of the other."

While a bank is a going concern, it is the beneficiary of money received by it, whether as the result of an assessment or by voluntary arrangement. When the bank has become insolvent, the creditors are the beneficiaries of the 100 per cent statutory liability imposed upon the stockholders, and this statutory liability of the stockholders to the creditors cannot be defeated or offset by the claim of a stockholder against the bank.

Appellant contends, however, that the money paid and the note delivered by his decedent to the bank were obtained by false representations; that there was such fraud as caused the money paid and the note given by his decedent to the bank to become a trust in the hands of the bank; and that, in equity, the amount of the note should

be offset against the claim of the receiver on the statutory double liability of the decedent stockholder. It will be noted, however, that in some of the cases above cited it was likewise claimed that the money paid to the bank while a going concern should be treated as a trust fund in the hands of the bank.

In the case of Andrew v. Farmers State Bank of Logan, 212 Iowa 329, 236 N. W. 392, this precise question here raised was presented. In that case a stockholder had previously paid a 100 per cent assessment on his stock while the bank was a going concern, and claimed that such assessment had been paid under an agreement with the banking department that there would be no further assessment in the event the institution failed. This assessment was paid in January, 1928, and the bank closed in June of the same year. After the bank had been closed, the state superintendent of banking, as receiver, commenced an action against the stockholders to enforce the 100 per cent liability imposed by the statute for the benefit of the bank's creditors. Certain of the stockholders urged that the money paid on the assessment in January was obtained under an express agreement which made it a trust fund in the hands of the bank. The trial court found for the stockholder defendants, and in reversing the trial court and passing upon the defense therein set up, we said:

"Conceding that the notes, money, and checks were paid into the bank by the stockholders, not for the purpose of satisfying an assessment under section 9246, but rather to be held in trust, even then a defense to appellant's cause of action does not appear.

"In order that appellees' position may be understood, it is repeated here. They claim that the notes, money, and checks were deposited with the understanding that they were to be held until the institution's solvency or insolvency finally could be determined. When that determination was made, the funds were to be disposed of accordingly; that is to say, if the institution could not be saved, the deposit was to be returned to the stockholders. But, on the other hand, if the bank with the assessment could continue as a going concern, then the deposit should be retained by the institution.

"Obviously that trust agreement could in no way afford a defense to appellant's cause of action. Appellant here is seeking to recover a 100 per cent assessment against the stockholders under Code, section 9251, before quoted. That assessment is not for the banking corporation, but rather for its creditors. The bank can in no way use

the proceeds of the assessment under section 9251. Such assessment in full is for the creditors of the insolvent institution. See cases above cited. So appellant, as the receiver, is entitled to a judgment against the appellee stockholders in behalf of the bank's creditors. Appellees, as stockholders, under the alleged trust agreement may have a claim against the banking corporation, as such; but that can in no way interfere with appellant's right to obtain judgment against the stockholders in behalf of the creditors under section 9251, supra. These creditors are entitled to the proceeds from the assessment under section 9251 regardless of the source from which appellees may pay the same.

"It may be true that appellees have a preference against the bank's assets because of the alleged trust, and through that preference they may be able to satisfy the assessment due the creditors; but in any event that possibility does not prevent the appellant from obtaining judgment against the appellees in behalf of the creditors. Following the judgment, appellees may procure the funds to pay it through the contemplated preference against the bank's assets or in any other way open to them. Although such resources may be open to the appellees, yet the existence of the same does not prevent the appellant from obtaining judgment under section 9251, supra. Under that section, appellees are not liable to the bank, but rather their individual liability is 'to the creditors'."

The holding in the case just cited is, in our opinion, decisive of the instant case. Whatever rights appellant may have because of the $1,000 paid and the note for $6,800 delivered by his decedent to the bank, while a going concern, cannot be determined in this action. However much we sympathize with the appellant, we are constrained to hold, under the provisions of our statutes and our decisions interpreting them, that he cannot offset the amount he claims due from the bank in the action brought by the receiver of the bank to enforce the stockholders' statutory double liability.

The decree of the trial court is, therefore, affirmed.—Affirmed.

CLAUSSEN, C. J., and EVANS, ALBERT, KINDIG, and KINTZINGER, JJ., concur.