L. A. ANDREW, Superintendent of Banking, Appellant, v. BRONSON SAVINGS BANK et al., Appellees.

No. 43014.

FEBRUARY 13, 1936.

Gerald F. Harrington, for appellant.

Brackney & Burington, for appellees.

POWERS, J.—In a proceeding in equity for the liquidation of the Bronson Savings Bank, the superintendent of banking, as receiver, instituted an action to recover from the stockholders of the bank for the benefit of its creditors the superadded liability

imposed by section 9251, Code 1931. The bank closed on January 11, 1933, and was subsequently and on January 14, 1933, adjudged insolvent, and liquidation thereof was ordered. The shareholders answered jointly and claimed a credit or right to a set-off on their several liabilities to the extent of (1) the amount of the deposits of each shareholder in the bank when it closed; (2) the amount of assessment on the stock paid by each stockholder while the bank was in operation and upon the demand of the superintendent of banking; and (3) the amount which the bank while in operation collected on charged off assets which the shareholders claim belonged to them because such assets were taken out of the bank with money furnished by them. The trial court granted a part of the credit or set-off claimed by the shareholders, but just what items of credit claimed were thus granted by the trial court do not appear from the findings of the court or the decree.

I.  The superadded liability imposed on stockholders in state and savings banks under section 9251, Code 1931, is not for the benefit of the bank. The bank itself has no interest in it and has no right to enforce it. It exists for the creditors of the bank only, and it does not become available unless the bank becomes insolvent. Andrew v. Peoples State Bank of Humboldt, 211 Iowa 649, 234 N. W. 542. Since it does not exist in favor of the bank, it would seem to follow quite naturally and inevitably that any claim of the shareholder against the bank, whether it arises by reason of the ownership of a deposit in the bank or in some other way, could not be used as a set-off. This conclusion is in accordance with our holdings. Andrew v. Farmers State Bank, 212 Iowa 329, 236 N. W. 392. Bates v. Clarion Sav. Bank, 217 Iowa 741, 252 N. W. 138. It is clear, therefore, that no right to a set-off exists because of the ownership of deposits by stockholders in the bank at the time it closed or because of collections made and retained by the bank on securities owned by the stockholders.

II.  It is equally clear that sums paid into the bank by the shareholders in the nature of assessments on their stock while the bank was a going concern cannot be credited or set off on such superadded liability. In the instant case, there was no formal action of the board of directors levying the assessment. It was demanded, however, by the superintendent of banking to restore the impaired capital of the bank. The only alternative to

paying it which the shareholders had was to have the directors of the bank institute proceedings for its formal levy and collection or to allow the bank to close and go into liquidation. It may therefore be assumed to have been a coercive rather than a purely voluntary payment. But that makes no difference. In neither event is there a right to a credit or a set-off. This court has definitely so held. Leach v. Arthur Savings Bank, 203 Iowa 1052, 213 N. W. 772.

Appellees, while conceding the general rule, claim, however, that the assessments paid in this case are different, in that it appears in this case by stipulation of the parties that the money paid in by the shareholders was used by the bank to pay depositors, and the case is therefore within an exception noted in Andrew v. Farmers Trust & Sav. Bank, 204 Iowa 243, 251, 213 N. W. 925, 928, 56 A. L. R. 521. It is true that in that case this court, in discussing the question generally, used this language:

"We cannot assume that the payment of money by a stockholder to a corporation to meet its ordinary functions as a bank imports that it was used to pay debts for which the stockholder is liable under statutory provisions."

This is not a statement that, where it appears that the sums paid into the bank by a shareholder by way of an assessment on his stock were used to pay creditors, then credit could be had by such shareholder on his superadded statutory liability to creditors of the bank on account of such payment. Moreover, if it had been such a statement, it would have been only dictum. No such question was in the case. Appellees claim for it about all that can be claimed when they say in argument: "If the record (in that case) had shown that the money paid in on the assessment had gone to the depositors *it might have* made an entirely different case." (Italics ours.) Without attempting to speculate on what the statement by the court was intended to mean, it is sufficient to say that such a showing could not have the effect of vesting in the shareholders the right to the credit claim. This results from the difference in the nature of the payments and the beneficiaries thereof. Every payment made to a bank by a shareholder thereof as a contribution to the capital of the bank and to restore impaired capital, whether paid in pursuance of an assessment formally levied or as a result of a demand by the superintendent of banking or as a result of voluntary action by the

shareholders, is a payment for the benefit of the bank to enable the bank to continue in business and to successfully operate. It goes to build up the resources represented by the shares of stock. It is the act of the owners of a business in putting in more of their capital into that business. It is entirely unrelated to the obligation to contribute to creditors of the bank an amount equal to the par value of the shares of stock held in the event the bank becomes insolvent and its resources are insufficient to pay its creditors. One is an incident to the operation of the bank; the other an incident to its liquidation. The one is to maintain capital of the bank unimpaired; the other to pay creditors of the bank. It can make no possible difference what the bank used the money for after it was paid in by the shareholders. The money when paid in became the bank's property and was subject to use by the bank in the operation of the business. Such use is perfectly consistent with the purpose of restoring impaired capital of benefiting the bank. The stipulation here shows that, when the money was paid in, paper in an equal amount was taken out of the bank. That shows the real purpose. Moreover, it is claimed that payment was coerced by the superintendent of banking. But he had no power of coercion by forcing an assessment except to restore impaired capital. Section 9246, Code 1931. But regardless of the purpose and independent of the object which these shareholders had in mind in paying in the money, the transaction was between the bank and the shareholders. Whatever rights, if any, the shareholders acquired by virtue of it was against the bank, not against the creditors of the bank. It could not, therefore, be the source of a credit or set-off on a claim which does not belong to the bank, which the bank has no interest in and no right to enforce, but which belongs solely to the creditors of the bank.

It follows that the trial court should not have allowed any credit or set-off to any of the shareholders, and that the decree in this case must be modified, and the case remanded to the district court for the entry of a decree in conformity with this opinion.—Reversed and remanded.

DONEGAN, C. J., and all Associate Justices concur.