OMAR YOUNKIN, Administrator, Appellee, v. RUBIO SAVINGS BANK, Appellant.

No. 44608.

FEBRUARY 14, 1939.

Edmund D. Morrison and Morrison & Morrison, for appellant.

Baldrige & Bailey, for appellee.

OLIVER, J.—This is an action at law brought by appellee, Omar Younkin, administrator of the estate of L. H. Dyarman, deceased, against appellant, Rubio Savings Bank of Rubio, Iowa, to recover upon bank deposits.

Appellent bank had been operating at Rubio, in Washington county, Iowa, as a savings bank under the laws of Iowa for many years prior to March 4, 1933, at which time it was closed by the proclamation of President Roosevelt which closed all banks. On March 13, 1933, the superintendent of banking of Iowa took over the management and operation of appellant bank under the provisions of Senate File 111, chapter 156, 45th General Assembly now Code sections 9283-e1 to e6, and operated said bank until May 1934, placing in charge as deputy

manager a Mr. Johnson until about October 1933, and thereafter Paul Gillespie.

On March 4, 1933, appellee's intestate, L. H.Dyarman, was the owner of five shares of the stock in said bank of a total par value of $500, and held certificates of deposit and a checking account aggregating, with back interest, $1071.80. Mr. Dyarman died July 26, 1933, and appellee was appointed administrator of his estate.

Soon after Mr. Gillespie was placed in charge it was decided to attempt to re-open the bank as a regular banking institution. Mr. Gillespie had from time to time reported its condition to the state banking department, and on November 1, 1933, orally advised the board of directors that the superintendent of banking would require an assessment of 100% as a condition to its re-opening. The board of directors on that date adopted a motion as follows ''an assessment of 100% was made on the capital stock of the Rubio Savings Bank to be approved by the State Banking Department, that waivers be obtained on 50% of the deposits and that an issue of preferred stock be made to pay Bills Payable remaining when the Rubio Savings Bank is released from Senate File No. 111''. Later Mr. Gillespie, one of the directors and the cashier conferred with the superintendent of banking, and on November 27, 1933, the governor of Iowa and the superintendent of banking wrote a joint letter to appellant bank stating:

''Upon an inspection of an examination of your bank, as made by this department, it is required by the undersigned that the stockholders of your bank shall pay an assessment equal to one hundred percent (100%) of the capital stock of the bank as of March 3, 1933.

''You will therefore, in accordance with the above requirements, and under the provisions of Senate File 111 and Senate File 483 and Acts mandatory thereto of the Forty-fifth General Assembly of Iowa, levy assess and collect from your stockholders an assessment of one hundred percent (100%) against each share of stock and the holder thereof, as the same appeared of record in your bank on March 3, 1933.

''This you shall do before being released by this department from Senate File 111.''

After receipt of this letter the bank wrote each stockholder

that the assessment had been made, was approved by the superintendent of banking, and was payable at the bank, but it is not contended that these letters were in the form required by Code section 9247. No action to levy or assess the stock was taken other than as heretofore noted. Thereafter representatives of appellant bank called upon the various stockholders with reference to said matter. A total of about $22,500 was collected from the holders of the outstanding $25,000 capital stock, all of whom contributed except appellee and except also certain insolvent estates whose stock was picked up by the bank and later put in trust. In December, appellee was interviewed, was told it was necessary that the 100% assessment be collected in order to reorganize the bank, and it was suggested that appellee secure a court order authorizing him to make payment.

Later, waiver agreements were secured from about two thirds of the creditors covering 90% of the unsecured obligations, each creditor agreeing to accept 50% of the amount due him in cash and the other 50% in the form of trust certificates payable out of certain segregated assets. Appellee administrator did not execute this creditor's waiver, but concedes its legality as to the deposits of decedent in the bank. On May 19, 1934, the bank was released from Senate File 111, and has since been operated by its officers and directors.

Appellee administrator not having paid the so-called stock assessment, the account of L. H. Dyarman in the bank was, as a part of the reorganization, charged $500 on account of "stock assessed". The entire controversy in this case revolves around the right of the appellant bank to make this charge against decedent's funds, there being no controversy as to the right of appellee to the trust certificate and dividends thereon.

This suit was instituted in 1935, after appellee secured an order of court authorizing him, as administrator, to bring the same. The petition, as amended, prayed judgment for $535.90 with interest at 5% from March 4, 1933, and at the conclusion of the trial a further amendment was filed praying that appellant be also required to deliver to appellee the trust certificate for the other $593.90 and to pay appellee any dividends declared thereon.

Appellant for answer alleged that on November 1, 1933, the board of directors duly made an assessment of 100% on the stock of the bank in accordance with the oral notification given

by Mr. Gillespie, also that all the conditions prescribed by the superintendent of banking for the return of the bank to the control of its directors and re-opening having been complied with except the collection of the assessment from the Dyarman stock, and it appearing that upon the re-opening Dyarman would have a deposit credit on the bank books of the re-opened bank of $535.90, the sum of $500 was charged and set off against said deposit credit and notice of said action was given to appellee administrator. Appellant also prayed general and equitable relief. Appellee replied denying the validity of the assessment or the right of the superintendent of banking, the governor, or the bank to appropriate funds belonging to said estate.

Jury was waived and the case was tried to the court. Evidence was introduced on behalf of the appellant, tending to prove the various things done in connection with the operation of the bank under the superintendent of banking and the arrangement relative to its reorganization, and the request made appellee for payment, all as hereinbefore detailed, all of which was admitted over objection to its competency, relevancy and materiality. Also taken, subject to the same objection, was evidence that on January 1, 1938, the book value of the bank stock was about $137 per share. It may be noted that the evidence as to the condition of the bank, all of which was given by the witness, Paul Gillespie, did not tend to show that the bank was insolvent when taken over by the banking department, but did affirmatively show that the bank was solvent in October 1933.

The finding and judgment sustained the claims of appellee, found that no legal or valid stock assessment was made, that the bank had no right of set-off, gave judgment against appellant for $667.79, and ordered appellant to deliver the trust certificate and to pay appellee all dividends declared thereon.

■ I. It is contended by appellant that even though the action was instituted at law for a money judgment and not thereafter transferred to equity, it was an equity action because both parties prayed for equitable relief and because it was tried to the court and certain testimony taken subject to objection. This contention is not well founded. Appellant's so-called cross-petition stated no grounds for equitable cognizance, the matters therein alleged not being such as would have entitled appellant to either affirmative or equitable relief, and serving only to repeat and amplify the defense pleaded in the answer. The record

shows this was a law action in which a trial by jury was waived and that while certain evidence was admitted subject to objections, the court sustained objections to other evidence. Petersen v. New York Life Ins. Co., 225 Iowa 293, 280 N. W. 521.

II. Appellant failed to comply with Rule 30 of the rules of this court in preparing its brief. The 9 errors relied upon were all set out together instead of in separate divisions. No part of the record referring to the errors is set out, nor does any assignment of error attempt to point out specifically the complaint against the rulings of the court. Following these omnibus errors so assigned is a brief in 6 points, none of which appear to refer to any specific error assigned and which discuss various propositions some of which were not assigned as errors. The argument which follows is in 5 divisions none of which refer to any specific assignment of error or brief point. See Pickett v. Wray, 225 Iowa 288, 280 N. W. 519. However, the record is short, and practically all of the alleged errors are addressed to the one proposition heretofore noted as being the crux of the issue, namely, the right of the bank to offset the $500. Therefore, we are disposed to consider this phase of the case. Swensen v. Union Central Life Ins. Co., 225 Iowa 428, 280 N. W. 600.

III. Referring now to the basic controversy, it may be said that if the $500 was owing to the bank by decedent or his estate, the bank could rightfully charge the item against such account. Necessarily the right to make said debit was contingent upon the validity of the obligation. The decision of the court was based upon the finding that no legal or valid stock assessment was ever made against said stock. This being a law action, such finding is conclusive if the evidence was sufficient to sustain it.

Appellant bank was taken over by the superintendent of banking under the provisions of chapter 156, Senate File 111, of the 45th General Assembly, and amendments thereto, and authority for some of the subsequent proceedings is based upon these acts and also upon Senate File 483, chapter 159 of the 45th General Assembly, as amended. All these acts are now set out in chapter 415 of the 1935 Code as sections 9283-e1 to e24, inclusive.

Chapter 159 of the 45th General Assembly has been passed upon by this court in the case of Priest v. Whitney Loan & Trust Company, 219 Iowa 1281, 261 N. W. 374, and held to be a valid

exercise of the reserve power of the state at the time of its enactment, such legislation being remedial in its nature and pertaining to a matter vitally affecting the general public interest and being appropriate measures addressed to a legitimate end.

Under Code section 9283-e3, the superintendent of banking, with the approval of the executive council, is given power to reorganize a bank. Section 9283-e12 provides that before any bank shall attempt to reorganize or take waivers the banking department shall make an examination "and shall determine, with the approval of the governor, what can and should be required to be paid by the officers, directors, and stockholders" and no waivers shall be taken until the amount so required shall have been paid. Any stockholder or his assignee, upon making such payment, may present his stock certificates to the superintendent of banking and by endorsement thereon secure release from further liability on such stock to the extent of the amount so paid. The banking department with the approval of the governor may waive or modify these requirements.

By virtue of the statutes above listed the superintendent of banking did take possession of said bank and did, on November 27, 1933, with the approval of the governor, require a 100% assessment on the capital stock, which the bank was ordered to levy, assess and collect before being released from control of the banking department. The statutes above mentioned provide no specific method for such levy, assessment and collection, and this phase of the matter would, therefore, be governed by other provisions of chapter 451 of the Code, if there were any such then in effect.

The levy and assessment so ordered could not have been made under Code sections 9251 and 9252, because those sections do not refer to assessments made by the bank or its directors but instead to the enforcement of statutory liability for the benefit of creditors. Collections under sections 9251, 9252 are not available to the corporation as such. Bates v. Clarion Savings Bank, 217 Iowa 741, 252 N. W. 138; Andrew v. Peoples State Bank, 211 Iowa 649, 234 N. W. 542; Home Savings Bank v. Berggren, 211 Iowa 697, 234 N. W. 573.

Therefore, the assessment must necessarily have been required to be made under the provisions of Code sections 9246, 9247, 9248 and 9248-a1, these being the only sections of the chapter which provide the method for making assessments re-

quired by the superintendent of banking in the case of impairment of capital stock. From the form of the order it appears that it was made in compliance with section 9246, and that the superintendent of banking did not attempt to levy an assessment but required the board of directors to levy, assess and collect as a prerequisite to release from Senate File 111. It will be remembered that the evidence in this case shows that the bank was solvent in October 1933, although its capital stock was undoubtedly impaired.

Thus it appears that under the order made by the superintendent of banking in this case an assessment by the board of directors would be necessary to fix the liability of a stockholder. This order appears to have been similar to the one mentioned in the case of Andrew v. Farmers State Bank, 212 Iowa 329, 236 N. W. 392, in which it was stated that the superintendent of banking, under authority of Code section 9246, ordered the bank directors to levy an assessment and that complying with such order the bank directors thereafter levied the assessment as provided by Code section 9247, and that notices thereof were duly served upon the stockholders. In Andrew v. Bronson Savings Bank, 221 Iowa 98, 265 N. W. 113, there was no formal action of the board of directors levying the assessment which had been demanded by the superintendent of banking to restore the impaired capital. The decision states that the only alternative to paying it which the shareholders had was to have the directors of the bank institute proceedings for its formal levy and collection or to allow the bank to close. In that case the payment was referred to as being coercive rather than voluntary.

In the case at bar there is no showing of any assessment made by the board of directors under the order of the superintendent of banking, of date November 27, 1933, nor of statutory compliance with such order. Under the record, the district court might properly have found among other things, that the motion adopted November 1, 1933, was not based upon the order of the superintendent of banking, made on November 27, 1933. In this connection it will be noted that the plan of November 1, 1933, provided for an issue of preferred stock, and there is no showing in the record that this was in accord with the order of November 27, 1933. Therefore, there was evidence from which the district court might properly have determined that the acts of the board of directors did not constitute compliance with the order and

the statute, and that the payments made by the various stockholders were voluntary in nature as distinguished from enforceable statutory assessments. Andrew v. Austin, 213 Iowa 963, 232 N. W. 79; Leach v. Arthur Savings Bank, 203 Iowa 1052, 213 N. W. 772.

This court has held that an assessment under Code section 9251 may be enforced without filing claim against the estate of a decedent. Bates v. McGill, 223 Iowa 62, 272 N. W. 535, and cases referred to therein. However, to hold that the estate of a decedent can be required to participate in and contribute to the reorganization of a bank which the evidence discloses may be of a voluntary as distinguished from a statutory character, is another matter. Such contribution and participation should not be compelled in the absence of substantial statutory compliance. It cannot be said that the finding of the district court is not supported by sufficient evidence and it necessarily follows that such finding should be affirmed.

From an examination of the record, however, it appears that the trial court overlooked the fact that under the waiver agreement, which was binding upon appellee, interest on the total amount of appellee's deposit was computed to April 2, 1934, and the aggregate of principal and interest as of said date was found to be $1,071.80. Appellee was then entitled to 50% of said amount or $535.90 in cash and a trust certificate for an equal amount. Therefore, the interest upon the $535.90 cash item should have been computed from April 2, 1934, instead of March 4, 1933, and to that extent the judgment of the trial court should be and is modified.

In all other respects it is affirmed.—Modified and affirmed.

RICHARDS, SAGER, STIGER, HALE, BLISS, and MILLER, JJ., concur.